Nina Schroder MAGNESS, Agnes
Schroder Atkins, and Lee
Alexander Magness

v.

RUSSIAN FEDERATION, Russian Min-
istry of Culture, Russian State Dia-
mond Fund, and American–Russian
Cultural Cooperation Foundation.

No. CIV.A. H–97–2498.

United States District Court,
S.D. Texas,
Houston Division.

June 9, 1999.

Daniel B. Nelson, Lee A. Magness, Liv-
ingston & Nelson, Houston, TX, for Plain-
tiffs.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HITTNER, District Judge.

### I.

#### Introduction

Plaintiffs Nina Schroder Magness and Agnes Schroder Atkins' father and plaintiff Lee Alexander Magness grandfather Ivan Karlovitch Schroder, owned and operated the C.M. Schroder Piano Factor business in St. Petersburg, Russia, until 1918. At that time, the business consisted of: (i) a large piano factory; (ii) several large tracts of land for curing wood located on the shipping channel in the East Industrial Section of St. Petersburg, (iii) a large shopping center on the Nevsky Prospeckt in downtown St. Petersburg; and (iv) a mansion with over 30 rooms located in downtown St. Petersburg. According to the plaintiffs, the value of the business and the family's property in 1918 was over 16,000,000.00 gold rubles or approximately $162,000,000.00.

In 1991, Russian President Boris Yeltsin signed the 1991 Investment Code prohibiting the nationalization or expropriation of foreign investments. In 1993, the Russian Constitution gave citizens the right to inherit, lease, mortgage, and sell real property. A Special Presidential Decree gave foreign citizens the right to receive title to land.

In November, 1994 the mayor of St. Petersburg, Anatoli Alexandrovitch Sobtchak, issued regulations governing the purchase of land and property by foreigners. In July, 1994 the plaintiffs traveled to St. Petersburg, Russia in order to collect, manage and operate their family properties. Plaintiff Lee Alexander Magness paid consideration to certain Russian agencies to retain title to the properties. Plaintiffs were assured by the Russian Government that the properties legally belonged to the plaintiffs and that title to the properties would reflect such ownership. Thereafter, the Russian Federation and the Ministry of Culture claimed that all the properties at issue are "national treasures" or "historical" in nature. Thus, these agencies nationalized the properties. According to the plaintiffs, all judicial records have reportedly been lost or have intentionally been misplaced.

In August, 1994 plaintiffs purchased several pianos manufactured by the piano factory now known as the Red October Piano Factory. Defendants, the Russian Ministry of Culture and the Russian Federation, would not allow the plaintiff to ship the pianos out of Russia. The pianos were confiscated and expropriated by the Ministry of Culture and the Russian Federation as national treasures.

Plaintiffs have named the following as defendants: the Russian Federation; Russian Ministry of Culture; the Russian State Diamond Fund; and the American–Russian Cultural Cooperation Foundation. On July 25, 1997 the Court conducted a hearing on plaintiffs' petition for Temporary Restraining Order. At that hearing, the Russian Federation appeared and was represented by counsel (one of the attorneys for the Russian Federation appeared in person and one appeared via telephone conference by permission of the Court). None of the other defendants were present, despite being notified of the hearing.

Subsequently, the Court ordered the plaintiffs to serve process on the defendants and such process was effected on August 31, 1998. As none of the defendants answered the complaint, the Court conducted a default judgment hearing on November 20, 1998. None of the defendants appeared at the hearing despite the fact that they were notified of the hearing. At the default judgment hearing, the Court considered the testimony and evidence offered by the plaintiffs. Based upon the testimony and evidence from the default judgment hearing, the Court enters the following findings of fact and conclusions of law.

## II.

### Findings of Fact

1. Plaintiff Nina Schroder Magness is the daughter of Johann Schroder and a citizen of the United States.

2. Plaintiff Agnes Schroder Atkins is the daughter of Johann Schroder and a citizen of the United States.

3. Plaintiff Lee Alexander Magness is the son of Nina Schroder Magness and the grandson of Johann Schroder and a citizen of the United States.

4. Johann Schroder is the son of K.M. Schroder.

5. Johann Schroder was the title owner of three real estate properties located in St. Petersburg, Russia at the time such properties were confiscated and expropriated by the Russian government in 1917.

6. From 1917 to 1994 the Russian Government claimed and held ownership of the three real estate properties previously owned by Johann Schroder.

7. The three real estate properties owned by Johann Schroder at the time of expropriation in 1917 are described as:

(1) The K.M. Schroder piano factory, now known as the "Red October Factory" located at 13th Line of Vassilivski Ostrov, St. Petersburg, Russia, approximately four stories, 80,000 square meters of space;

(2) A retail shopping center, approximately 20,000 square meters, located at No. 52 on the Nevsky Prospeckt in downtown St. Petersburg, Russia;

(3) A residential property located at Petrogradskaya No. 32 in downtown St. Petersburg, Russia.

8. In 1991 Russian President Boris Yeltsin signed the 1991 Investment Code prohibiting the nationalization or expropriation of foreign investments.

9. In 1993, the Russian Constitution gave citizens the right to inherit, lease, mortgage and sell real property and a special presidential decree gave foreign citizens the right to receive title to land.

10. In 1994, the Russian Federation promulgated a property law allowing foreigners, whose descendants were title owners of real property in Russia prior to 1917, to reclaim their descendants' real property that was confiscated and expropriated in 1917 by the Russian Government.

11. In 1994 plaintiffs Nina Schroder Magness, Agnes Schroder Atkins And Lee Alexander Magness traveled to St. Petersburg, Russia to reclaim the three real estate properties owned by their descendant, Johann Schroder.

12. Plaintiffs met with officials of the Russian Federation in 1994 and established chain of title and ownership interest in the properties in question.

13. Plaintiffs Nina Schroder Magness, Agnes Schroder Atkins and Lee Alexander Magness met with officials of the Russian Federation, executed the proper papers and documents required by Russian law to reclaim the real property, paid the re-quested fees, and established through historic records and testimony they were the natural heirs of Johann Schroder.

14. Upon meeting all the requirements under Russian law to reclaim the three real estate properties, officials of the Russian Federation acknowledged plaintiffs Nina Schroder Magness, Agnes Schroder Atkins and Lee Alexander Magness, ownership and title to the three real properties.

15. Defendant the Russian Federation in 1994, subsequent to plaintiffs, establishing their ownership and title to the three real estate properties, has expropriated and divested the plaintiffs of their ownership and title to the three real estate properties.

16. Defendants have not paid any compensation to plaintiffs for the properties expropriated.

17. The properties expropriated by defendants were not for public use, as the properties were sold by defendant the Russian Federation to individuals for personal profit or gain.

18. The value of the piano factory, at the time of its expropriation in 1994, was $96,000,000.00 United States dollars.

19. The value of the residential home at the time of its expropriation in 1994 was $2,160,000.00 United States dollars.

20. The value of the additional properties located on the Nevsky Prospeckt, at the time of its expropriation in 1994, was $69,120,000.00 United States dollars.

21. Plaintiffs have lost rental value and revenues from the piano factory of $38,-400,000.00 United States dollars from 1994 until November 20, 1998.

22. Plaintiffs have lost rental value and revenues from the residential home of $864,000.00 United States dollars from 1994 until November 20, 1998.

23. Plaintiffs have lost rental value and revenues from the retail properties located on the Nevsky Prospeckt of $27,648,000.00

United States dollars from 1994 until November 20, 1998.

24. Plaintiff Lee Alexander Magness, while in St. Petersburg, Russia in 1994, purchased two antique Schroder pianos, one built in 1910 and the other built in 1889.

25. Plaintiff Lee Alexander Magness had monies wired from the United States, via Western Union, to St. Petersburg, Russia, to purchase the two Schroder pianos while he was in Russia.

26. Plaintiff Lee Alexander Magness fulfilled all requirements of the Russian Ministry of Culture and Russian Federation to have the two antique Schroder pianos certified for shipment out of the Russian Federation to the United States.

27. Defendant the Ministry of Culture acknowledged ownership of pianos by Lee Alexander Magness.

28. The two antique Schroder pianos were confiscated and expropriated by defendants the Russian Ministry of Culture and the Russian Federation.

29. The value of each of the two antique Schroder pianos is $200,000.00 United States dollars.

30. The Russian Federation and defendants were notified of the pending suit pursuant to Foreign Sovereigns Immunity Act 28 U.S.C. § 1608.

31. The defendants received notice of default judgment hearing held November 20, 1998.

32. None of the defendants appeared at the default judgment hearing.

33. Plaintiff Lee Alexander Magness was qualified as an expert for purposes of damages.

34. The testimony and evidence offered by the plaintiffs at the default judgment hearing was wholly uncontroverted.

35. Defendants are displaying and exhibiting within the United States territories antiquities of like kind and character as those items expropriated.

36. Defendants are charging funds for admission to the exhibits displaying antiquities of like kind and character as those items expropriated.

37. The Russian Federation and defendants have solicited and received United States citizens' funds in exchange for guided tours to Russia to view various museums, palaces, jewels, and other items through the distribution of brochures and marketing of such at these exhibits.

### III.

### Conclusions of Law

1. The Court finds that defendants have been properly served pursuant to the Foreign Sovereigns Immunity Act and in accordance with international law but failed to answer.

2. The Russian Federation appeared at the Temporary Restraining Order hearing on July 16, 1997 through its attorneys, Brandon Cook of Verner, Liipfert, Bernhard, McPherson & Hand of Houston, Texas and Tim Dickinson of Dickinson & Lanmayer, of Washington, D.C. Upon request and with permission of the Court, defense counsel Tim Dickinson appeared via telephone. Brandon Cook was personally present.

3. The Russian Federation is a sovereign state.

4. The Russian Ministry of Culture, Russian State Diamond Fund and American–Russian Cultural Cooperation Foundation are agencies or instrumentalities of the Russian Federation.

5. The Russian Federation, Russian Ministry of Culture, Russian State Diamond Fund, and American–Russian Cultural Cooperation Foundation are conducting a for profit "commercial activity" as defined in the Foreign Sovereigns Immunity Act in the States of Texas, Delaware, Tennessee, California, Nevada and various other States of the United States.

6. Defendants have engaged in commercial activities by selling admission licenses to United States citizens to view the Romanov Jewels Exhibit and the Nicholas and Alexandra Exhibit.

7. Defendants have engaged in "commercial activity" through the marketing and sales of books, T-shirts, sweat shirts, jewelry, posters, videos, post cards, and other typical Russian items at the exhibit sites.

8. Defendants have received payments in United States funds through cash, checks, money orders, and credit cards related to these "commercial activities."

9. Defendants have engaged in interstate commerce, commercial activities, and international commerce by offering and selling numerous items listed above through their web site located at www.nicholasandalexandra.com.

10. Defendants have engaged in interstate commerce, commercial activities, and international commerce by accepting various United States credit cards and funds in exchange for admissions tickets to the Nicholas and Alexandra and Romanov Jewels exhibits and in exchange for various merchandise listed above.

11. Plaintiffs have successfully proven that three exceptions under the Foreign Sovereigns Immunity Act, specifically 28 U.S.C. § 1605(a)(2), apply to their claims:

a. The Russian Federation and its agencies and instrumentalities are carrying on a commercial activity in the United States; and

b. The Russian Federation and its agencies and instrumentalities are performing acts in the United States in connection with a commercial activity elsewhere (*i.e.* tourism in Russia); and

c. The Russian Federation and its agencies and instrumentalities are performing acts outside the United States, (sales of products worldwide on the Internet and international tourism) and

such acts cause a direct effect in the United States.

12. The Russian Federation, Russian Ministry of Culture, Russian State Diamond Fund, and American–Russian Cultural Cooperation Foundation have engaged in commercial activity in the United States by: (a) specific commercial transactions or acts and by (b) regular course of commercial conduct. The Russian Federation has shown patterns of using exhibits to generate sales of Russian products and by increasing tourism to its country.

13. These commercial activities engaged in by defendants are those which a private party might engage.

14. The Russian Federations' seizure of personal and real property with subsequent leasing, operation, or sale similarly constitutes commercial activity.

15. The commercial activities carried on in the United States by the Russian Federation, Russian Ministry of Culture, Russian State Diamond Fund, and American–Russian Cultural Cooperation Foundation have substantial contact with the United States. (*i.e.* Russia's advertisement of hotels, museums, antiquities, restaurants, shops, and solicitation of United States citizens).

16. Sufficient nexus exists between plaintiffs' expropriation claims and the stream of revenue and benefits the Russian Federation is receiving through showing various antiquities and use of Plaintiffs' real property.

17. The Russian Federation, Russian Ministry of Culture, Russian State Diamond Fund and American–Russian Cultural Cooperation Foundation's continuing receipt of profits and benefits rightfully belonging to Plaintiffs including those derived from United States sources, are "specific acts that form the basis of this suit."

18. The Russian Federation, Russian Ministry of Culture, Russian State Diamond Fund and American–Russian Cultural Cooperation Foundation's solicitation of

United States citizens, for special tours of museums and antiquities located in Russia, as well as in the United States, and acceptance of payments for those reservations in this country, meets the material connection requirement between plaintiffs' cause of action and the act performed in the United States pursuant to 28 U.S.C. § 1605(a)(2).

19. The Russian Federation, Russian Ministry of Culture, Russian State Diamond Fund, and American–Russian Cultural Cooperation Foundation's seizure and sale, for continuing operation and lease, of plaintiffs' property constitute acts that Defendants have performed outside the United States territory and in connection with the commercial activities of operating the properties and managing of Plaintiffs' real estate in Russia. These activities are "of a kind in which a private party might engage", and such acts cause a direct effect in the United States in that Plaintiffs were to accept delivery of their pianos in Houston, Texas, U.S.A.

20. Owners of the Schroder piano factory and commercial realty in Russia, are entitled to profits earned by such entities. Such profits would be payable at Plaintiffs place of residence, thus further satisfying the direct effect requirement of 28 U.S.C. § 1605(a)(2).

21. Plaintiffs have satisfied the international takings exception under the Foreign Sovereigns Immunity Act 28 U.S.C. § 1605(A)(3).

22. Defendants expropriated property in violation of international law; and (1) that property and property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the Russian Federation; and (2) that property (pianos and antiquities) is owned or operated by the Russian State Diamond Fund, the Russian Ministry of Culture, and the American–Russian Cultural Cooperation Foundation, which are all instrumentalities or agencies of the Russian Federation and such agencies and instrumentalities are engaged in commercial activity in the United States.

23. Plaintiffs were all United States citizens at the time of expropriation in 1994.

24. Plaintiffs' claims are substantial and non-frivolous and provide a sufficient basis for exercise of jurisdiction.

25. The Russian Federation took plaintiffs' property that (a) was not for public purpose in that the properties were sold, operated and/or leased for individual personal profit or gain; (b) was discriminatory in that it singled out aliens of a particular nationality (*i.e*—United States citizens); and (c) was not accompanied by provision for just compensation (*i.e.* no plaintiff received any compensation for the seizures).

26. The Russian Federation's violation of any one of the above proscriptions is a violation of international law.

27. The Russian State Diamond Fund, Ministry of Culture, and American–Russian Cultural Cooperation Foundation all meet the definition of an agency or instrumentality of the Russian Federation. They are:

(1) Separate of the Russian Federation;

(2) An organization of a foreign state or political subdivision thereof; and

(3) are not citizens of a State of the United States.

28. Plaintiffs have been damaged by the expropriation of the three real estate properties in the total amount of 234,192,-000.00 United States dollars.

29. Plaintiff Lee Alexander Magness has been damaged by the expropriation of the two antique Schroder pianos in the total amount of $400,000.00.