IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20136
_____


NINA SCHRODER MAGNESS;
AGNES SCHRODER ATKINS;
LEE ALEXANDER MAGNESS,

Plaintiffs-Appellees,

versus

RUSSIAN FEDERATION; ET AL.,

Defendants,

RUSSIAN FEDERATION; RUSSIAN
MINISTRY OF CULTURE;
RUSSIAN STATE DIAMOND FUND,

Defendants-Appellants.
_____

Appeal from the United States District Court for the
Southern District of Texas, Houston

_____
April 24, 2001
Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[*]

E. GRADY JOLLY, Circuit Judge:

During the Bolshevik Revolution of 1918, the Soviet government

expropriated a piano factory and mansion owned by the Magness

family in St. Petersburg, Russia.  In 1994, the appellees,

descendants of the Magness family, believed that changes in the

_____

[*]Judge of the U.S. Court of International Trade, sitting by
designation.

laws of the Russian Federation may now authorize the recovery of their property. The Magness descendants met with Russian officials in St. Petersburg in an unsuccessful attempt to regain the real estate. This suit followed and a default judgment was entered against the Russian defendants in the amount of $234 million plus interest.

In this appeal we are called upon to interpret the service of process provisions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a-b), which outlines the methods for serving process upon foreign entities. Specifically, we must determine whether those provisions demand strict compliance therewith, or whether either of these provisions can be satisfied by some form of substantial compliance. In keeping with the plain language of the FSIA, we conclude that Congress intended to require strict compliance with section 1608(a) as to service upon foreign states and their political subdivisions. However, we also hold that substantial compliance--that is, actual notice of the suit and the consequences thereof--can be sufficient to satisfy the requirements of section 1608(b) as to service upon an agency or instrumentality of a foreign state. In conclusion, we vacate the default judgment and remand to allow proper service on the defendants.

I

We turn first to the procedural history of this case. In July 1997, the Magness descendants filed this suit in the Southern District of Texas, seeking a TRO that would prevent a traveling exhibit of Russian Romanov family jewels, then on display in Houston, from leaving the jurisdiction. The named defendants included the Russian Federation, the Russian Ministry of Culture, the Russian State Diamond Fund,[1] and the Cultural Foundation sponsoring the exhibition.[2] The suit alleged that the defendants had nationalized the Magness family property in 1918 and further had expropriated several antique pianos owned by the plaintiffs in the 1990s. The Russian Federation obtained United States counsel, who represented its interest at the TRO hearing. The court denied the TRO request.

After a year-long dormancy, in August 1998 the district court ordered the Magness descendants to serve the summons and complaint on the defendants, and to do so before September 1, 1998. They attempted to serve the defendants in several ways. They first served the attorneys who represented the Russian Federation at the TRO hearing. In addition, they served the Texas Secretary of

---

[1]The State Diamond Fund is an agency of the Russian Federation created to house and oversee Russia's collection of precious stones.

[2]The default judgment eventually awarded against the American-Russian Cultural Cooperation Foundation was later dropped by the court, and the Foundation is not a party to this appeal.

3

State, with instructions that the Secretary forward the summons and complaint to "the Russian Federation c/o Boris Yeltsin and the Russian Ministry of Culture/Russian State Diamond Fund c/o Deputy Minister of Culture Mikhail Schvidkoy." The Magness descendants also forwarded the summons and complaint to the Director of Special Consular Affairs at the State Department, with instructions to serve all defendants through diplomatic channels.[3] Finally, the Magness descendants purported to serve process by sending the summons and complaint directly to the Russian Deputy Minister of Culture in Moscow.[4]

On November 13, 1998, the State Department informed the Magness descendants that it could not serve the defendants because of several procedural errors.[5] On November 19, 1998, the Magness descendants filed a motion for a default judgment. The court held a hearing on the motion the following day, during which the Magness descendants submitted evidence that they had served the defendants

---

[3]While the Magness descendants recognize that service was never completed through the State Department, they allege that the defendants received service through the Texas Secretary of State and otherwise had actual notice of the suit.

[4]The record shows that some persons signed for these mailed documents. However, there is no indication of who specifically signed for the documents. Nor is there any evidence of who in the Russian government may have seen the documents.

[5]The State Department gave the Magness descendants' counsel advice on correcting these errors and offered a contact should they have any further questions.

by the methods previously described.  The court determined that the defendants had been properly served and entered a default judgment. The court approved the Magness descendants' proposed findings of facts and conclusions of law on June 8, 1999, and entered a final judgment against the defendants.  See Magness v. Russian Federation, 54 F.Supp.2d 700 (S.D. Tex. 1999).

In October 1999, the defendants retained United States counsel in an attempt to vacate the default judgment under Rule 60.  On January 12, 2000, the district court denied the motion, ruling that the Magness descendants had "substantially complied" with the service of process requirements of the FSIA and provided sufficient notice of the suit to the defendants.  This appeal followed.

## II

A district court's denial of a motion to vacate under Rule 60 is reviewed for abuse of discretion.  See CJC Holdings v. Wright & Lato, Inc., 979 F.2d 60, 63 (5th Cir. 1992).  Because of the seriousness of a default judgment, "even a slight abuse [of discretion] may justify reversal." Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981)).

The FSIA outlines specific provisions for service of process upon foreign governments and agencies in 28 U.S.C. § 1608.[6]  The

---

[6]In full, § 1608(a-b) reads (emphasis added):

(a) Service in the courts of the United States and of the

5

States shall be made upon a <u>foreign state or political subdivision</u> of a foreign state:

>    (1) by delivery of a copy of the summons and complaint in accordance with <u>any special arrangement</u> for service between the plaintiff and the foreign state or political subdivision; or

>    (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an <u>applicable international convention</u> on service of judicial documents; or

>    (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, <u>by any form of mail requiring a signed receipt,</u> <u>to be addressed and dispatched by the clerk of the court</u> to the head of the ministry of foreign affairs of the foreign state concerned, or

>    (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, <u>by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington</u>, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

(b) Service in the courts of the United States and of the States shall be made upon <u>an agency or instrumentality of</u>

Magness descendants acknowledge that they failed strictly to comply

with the service provisions of the FSIA.[7]   The provisions for

_____

a foreign state:

> (1) by delivery of a copy of the summons and complaint in accordance with <u>any special arrangement</u> for service between the plaintiff and the agency or instrumentality; or

> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other <u>agent authorized by appointment or by law</u> to receive service of process in the United States; or in accordance with an <u>applicable international convention</u> on service of judicial documents; or

> (3) <u>if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice</u>, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--

> (A) as directed by an authority of the foreign state or political subdivision in response to a <u>letter rogatory</u> or request or

> (B) <u>by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court</u> to the agency or instrumentality to be served, or

> (C) as directed <u>by order of the court</u> consistent with the law of the place where service is to be made.

[7]All parties agree that service upon the Russian Federation (as a foreign state) and the Russian Ministry of Culture (as a political subdivision) is dictated by § 1608(a), while service upon the Russian State Diamond Fund (as an instrumentality of Russia) is governed by § 1608(b).   Under 28 U.S.C. § 1603(a), the term "political subdivision" includes all governmental units beneath the

service under section 1608 are hierarchical, such that a plaintiff must attempt the methods of service in the order they are laid out in the statute.[8]  Regarding the Russian Federation and the Russian Ministry of Culture under section 1608(a), they must first be served in accordance with any special arrangement between the parties or in accordance with an applicable international convention.  See 28 U.S.C. § 1608(a)(1-2).  Given that there was no special arrangement or international convention governing service here, the Magness descendants are required to have attempted service on the head of the Russian Ministry of Foreign Affairs.  See 28 U.S.C. § 1608(a)(3).  Finally, if service could not be made through the Ministry of Foreign Affairs within thirty days, they could resort to service through the State Department.  See 28 U.S.C. § 1608(a)(4).

---

central government.  An "agency or instrumentality" of a foreign state, on the other hand, is defined as any organ or political subdivision of a foreign state which is a separate legal person or entity. 28 U.S.C. § 1603(b).  Whether an entity is a "separate legal person" depends upon the nature of its "core functions"-- governmental vs. commercial--and whether the entity is treated as a separate legal entity under the laws of the foreign state.  See Transaero v. La Fuerza Aerea Boliviana, 30 F.3d 148, 151 (D.C. Cir. 1994); Hyatt Corp. v. Stanton, 945 F.Supp. 675, 683 (S.D.N.Y. 1996).  Under this formulation, the Russian Ministry of Culture is governed by § 1608(a), while the Russian State Diamond Fund is a separate legal entity governed by § 1608(b).

[8]The legislative history of the FSIA confirms this structure of the service provisions, in that Congress expressly provided that "[t]here is a hierarchy in the methods of service."  H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976), at 11.

Instead of asking the clerk of the district court to send the summons and notice of suit by return receipt mail to the head of the Russian foreign ministry under section 1608(a)(3), the Magness descendants sent their complaint to the Texas Secretary of State for forwarding to Boris Yeltsin, and sent the complaint <u>directly</u> to the Russian Deputy Minister of Culture. Thus, the FSIA was not strictly complied with as to the Russian Federation and Ministry of Culture.[9]

---

[9]As to the defendant Russian Federation, the Magness descendants argue that any service of process defense was waived when the Russian Federation sent counsel to appear at the TRO emergency hearing in July 1997. At the time of the TRO hearing, the Magness descendants had not yet attempted service; thus, Russia could not have been expected to raise a faulty service defense. The law establishes that waiver under the FSIA occurs "only when the sovereign/state fails to assert immunity in a responsive pleading." <u>MCI Telecomm. Corp. v. Alhadhood</u>, 82 F.3d 658, 661-62 (5th Cir. 1996).

The cases cited by the Magness descendants fail to support sufficiently their argument that Russia's appearance at an emergency TRO hearing before any attempted service waived any faulty service defense. The Magness descendants primarily rely on <u>Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.</u>, 811 F.2d 278, 281 (5th Cir. 1987), for this proposition. However, the defendants in <u>Broadcast Music</u> actively participated in events surrounding the trial for months by accepting deposition notices, engaging in settlement discussions, and attending pretrial meetings. Here, Russia made only one appearance--at an emergency TRO hearing held one day after the claim was filed--and Russia's TRO counsel informed the Magness descendants that they were unable to accept service on behalf of Russia.

Even the district court apparently did not think the Russian Federation had waived its right to proper service. After a year of inaction following the TRO denial, the court threatened to dismiss the Magness descendants' suit if they did not properly serve the defendants by September 1, 1998. The court, it appears to us, would not have ordered such service upon Russia if it believed the

As to the Russian State Diamond Fund, section 1608(b) (applicable to instrumentalities of a foreign state) was similarly not strictly followed. A plaintiff must first attempt service in accordance with any special arrangement between the parties. See 28 U.S.C. § 1608(b)(1). Next, a plaintiff may serve through an authorized agent in the United States or according to an applicable international convention. See 28 U.S.C. § 1608(b)(2). If no such agent or convention exists, as was the case here, a plaintiff may serve papers via a letter rogatory,[10] through the clerk of the court, or as directed by the court, if these methods are "reasonably calculated to give actual notice." See 28 U.S.C. § 1608(b)(3). Instead of following the statute, the Magness descendants forwarded a copy of their papers to the State Department and the Texas Secretary of State for service upon the Fund. Thus, the requirements of section 1608(b) were not strictly followed as to the Russian State Diamond Fund.[11]

III

Federation's appearance at the TRO had waived service.

[10]A letter rogatory is a formal request from a court in one country to the appropriate judicial authorities in another country that can effectuate service of process.

[11]All parties acknowledge that no "special arrangement" existed between the parties in this case, and no applicable "international convention" authorizes service in any way. Therefore, § 1608(a)(1-2) and § 1608(b)(1-2) are inapplicable and not at issue in this appeal.

10

The question before this court, therefore, is whether strict compliance is required for service of process under section 1608(a), for a foreign state, and under section 1608(b), for an instrumentality of a foreign state. The Magness descendants contend that, even if their attempts at service of process upon the defendants did not strictly comply with section 1608, they substantially complied with the FSIA, and that the defendants had actual notice of the suit. They further argue that, in any event, the Russian Federation waived its right to contest service by appearing at the TRO hearing. The defendants, however, argue that the FSIA makes no provision for anything other than strict compliance with its service of process requirements, and that actual notice cannot substitute for proper service under either section 1608(a) or (b). In addition, the appellants and the United States, as amici, contend that, in any event, the Magness descendants failed to even substantially comply with section 1608(a) or (b). Because service was never effectuated, the district court had no personal jurisdiction over the defendants, they claim, and thus the default judgment should be vacated pursuant to Rule 60(b)(4).[12]

---

[12]The appellants alternatively argue that the default judgment should have been vacated under Rule 60(b)(3), because the judgment was secured through fraud, misrepresentation, and misconduct. They claim that the Magness descendants never informed the court that they had been instructed by the State Department that service was

11

A

Section 1608(a)

We conclude that the provisions for service of process upon a foreign state or political subdivision of a foreign state outlined in section 1608(a) can only be satisfied by strict compliance. The express language of the statute requires that service "shall" be made upon a foreign state in the manner prescribed. Moreover, the committee report on the FSIA states that "section 1608(a) sets forth the exclusive procedures for service on a foreign state." H.R. Rep. No. 94-1487, at 24 (1976) (emphasis added).[13] This language simply does not support a finding that anything less than strict compliance will suffice under the law.

This interpretation is in accord with decisions of the Second, Seventh, and D.C. Circuits.[14] In Gray v. Permanent Mission of People's Republic of Congo to United Nations, 443 F.Supp. 816, 821 (S.D.N.Y.), aff'd, 580 F.2d 1044 (2d Cir. 1978), the Second Circuit

_____

ineffectual, and thus they obtained the default judgment under fraudulent means.

[13]Incidentally, this "exclusive procedures" language is missing in the discussion of § 1608(b) in the legislative history.

[14]Although the Ninth Circuit appears to have adopted a blanket "substantial compliance" test for § 1608 in Straub v. Green, Inc., 38 F.3d 448, 453 (9th Cir. 1994), that decision dealt only with service under § 1608(b), and the court's decision in Gerritsen v. Consulado General De Mexico, 989 F.2d 340, 345 (9th Cir. 1993), suggests that plaintiffs must strictly comply with the service provisions on a foreign state under § 1608(a).

affirmed a district court holding that, under section 1608(a), "informal notification through channels clearly outside the obvious requirements of the applicable statute cannot be substituted for those which meet the requirements."  The court determined that actual notice given the defendant, a foreign state to be served under section 1608(a), was insufficient to meet the requirements of the FSIA.  See also Shen v. Japan Airlines, 918 F.Supp. 686, 692 (S.D.N.Y. 1994).

The Seventh Circuit similarly required strict compliance under section 1608(a) in Alberti v. Empresa Nicaraguense De La Carne, 705 F.2d 250, 253 (7th Cir. 1983).  In that case, noting that section 1608(a) "delineates the 'exclusive procedures' for effecting service of process upon a foreign state," the court refused to excuse the plaintiff's service on the Nicaraguan Ambassador in lieu of the head of the foreign affairs ministry.  See also Magnus Elec., Inc., v. Royal Bank of Canada, 620 F.Supp. 387, 389 (N.D.Ill. 1985), aff'd in part, rev'd in part on other grounds, 830 F.2d 1396 (7th Cir. 1987) (holding that "noncompliance with the [FSIA]'s literal requirements (though it certainly did provide notice) deprives this Court of personal jurisdiction.").

The District of Columbia Circuit, holding that "strict adherence to the terms of 1608(a) is required," also rejected the substantial compliance test under section 1608(a) in Transaero,

13

<u>Inc. v. La Fuerza Aerea Boliviana</u>, 30 F.3d 148, 154 (D.C. Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 1150, 115 S.Ct. 1101 (1995). The court rejected the claim that service upon the Bolivian Ambassador and Consul General in Washington was sufficient under section 1608(a), noting that foreign states, unlike foreign agencies or instrumentalities, may lack the "sophisticated knowledge of the United States legal system" that might otherwise authorize substantial compliance with service provisions. <u>Id.</u>

Based on these decisions, the express language of section 1608(a), and the United States' interest in ensuring that the proper officials of a foreign state are notified when a suit is instituted, we hold that plaintiffs must strictly comply with the statutory service of process provisions when suing a foreign state or political subdivision under section 1608(a).[15]

B

Section 1608(b)

The statutory language and case law concerning section 1608(b) present a different question. As such, we are convinced that substantial compliance with the provisions of service upon an

---

[15]We leave open the possibility that, under extraordinary circumstances not present in this case, when service of process according to the express provisions of § 1608(a) is a manifest impossibility, other methods of service that fully satisfy the goals of section 1608(a) might be sufficient. However, we decline to define any such exception until those extraordinary circumstances come before this court.

14

agency or instrumentality of a foreign state--that is, service that gives actual notice of the suit and the consequences thereof to the proper individuals within the agency or instrumentality--is sufficient to effectuate service under section 1608(b).

Perhaps most significant to this determination is the express statement in section 1608(b)(3) that delivery under that subsection is authorized "if reasonably calculated to give actual notice." This language reflects the fact that "Congress was there concerned with substance rather than form." Transaero, 30 F.3d at 154. This reference to actual notice is absent from section 1608(a).

Our holding as to section 1608(b) is in accord with the Third, Sixth, Ninth, Eleventh, and D.C. Circuits, all of which have determined that substantial compliance with section 1608(b) is sufficient so long as the defendants have actual notice of the suit.[16] The Third Circuit found that service under section 1608(b) was sufficient absent strict compliance in Velidor v. L/P/G Benghazi, 653 F.2d 812, 821 (3d Cir. 1981). The court noted that

---

[16]We recognize that not all federal courts have found substantial compliance sufficient under § 1608(b). See, e.g., LeDonne v. Gulf Air, Inc., 700 F.Supp. 1400 (E.D.Va. 1988) (requiring strict compliance under 1608(b)); Lippus v. Dahlgren Mfg. Co., 644 F.Supp. 1473, 1479 (E.D.N.Y. 1986) (requiring that certain "exigencies" be present before excusing non-strict compliance with § 1608(b)); Unidyne Corp. v. Aerolineas Argentinas, 590 F.Supp. 391, 395 (E.D.Va. 1984) (noting that "this Court is directed to strictly interpret the requirements set forth in § 1608(b).").

15

"[r]ather than making service on foreign instrumentalities a rigid, technical, or cumbersome procedure, Congress sought to facilitate the ability of private plaintiffs to serve foreign entities." Id. Again, the court concluded that actual notice was the determining consideration. See also Obenchain Corp. v. Corporation Nacionale de Inversiones, 665 F.Supp. 435, 437 (W.D.Pa. 1987), aff'd in part, rev'd in part on other grounds, 898 F.2d 142 (3d Cir. 1990).

The Sixth Circuit adopted a similar substantial compliance test for section 1608(b) in Sherer v. Construcciones Aeronauticas, 987 F.2d 1246 (6th Cir. 1993). The court observed that "the common theme running through [FSIA] cases, whether 'substantial compliance' or 'strict compliance,' is the importance of actual notice to the defendants." Id. at 1249. The court adopted the substantial compliance approach "under the circumstances in this case," where the defendant had answered the complaint despite the defect in service and had raised twenty-one affirmative defenses. Id. at 1250.

In Straub v. Green, Inc., 38 F.3d 448, 453 (9th Cir. 1994), the Ninth Circuit "formally adopt[ed] a substantial compliance test for the FSIA." The court determined that, under section 1608(b), "the pivotal factor is whether the defendant receives actual notice

16

and was not prejudiced by the lack of compliance." Id.[17] And in Harris Corp. v. National Iranian Radio and Television, 691 F.2d 1344, 1352 (11th Cir. 1982), the Eleventh Circuit similarly adopted the substantial compliance test under § 1608(b), finding that actual notice should override technical deficiencies in service under that section.[18]

Finally, the D.C. Circuit in Transaero, 30 F.3d at 154, noted that "[t]he authorities generally hold that section 1608(b) may be satisfied by technically faulty service that gives adequate notice to the [defendant]." Id. at 153. In authorizing substantial compliance under section 1608(b), the court observed that foreign agencies and instrumentalities, which are "typically international commercial enterprises, often possess a sophisticated knowledge of the United States legal system that other organs of foreign governments may lack." Id. at 154.

C

---

[17]The Fifth Circuit has expressly disagreed with Straub, albeit on unrelated grounds. See Pere v. Nuovo Pignone, Inc., 150 F.3d 477, 480-81 (5th Cir. 1998).

[18]The Harris court appeared to limit its holding by stating, "[t]hough we find service adequate here, we admonish those seeking to invoke the FSIA to follow the service provisions it contains. . . . There is no excuse for departure from the dictates of the statute." Id. at 1352, n.16. Since the Harris decision, at least one district court in the Eleventh Circuit has interpreted this language to mean that strict compliance is required absent extraordinary circumstances. See Shell Oil Co. v. M/V Itanage, 830 F.Supp. 1423, 1425 (M.D.Fla. 1993).

In sum, virtually no authority suggests that substantial compliance would suffice under section 1608(a) as to foreign governments--the Russian Federation and the Russian Minister of Culture in this case. Nevertheless, the vast majority of the case law does support a holding that substantial compliance under section 1608(b), coupled with actual notice, can suffice to meet the statutory service requirements for instrumentalities of a foreign state. We formally adopt such a test for section 1608(b), but decline to authorize substantial compliance as to section 1608(a).

Having already determined that the Magness descendants failed strictly to comply with either section 1608(a) or (b), we now turn to ascertain whether the plaintiffs substantially complied with the provisions of section 1608(b) as to the Russian State Diamond Fund in this case.

                                    IV

The cases authorizing substantial compliance with the service of process provisions under section 1608(b) note that it is actual notice by the defendant that substantiates the compliance. The Magness descendants assert that the defendants all had actual notice of the suit, while the defendants deny having such notice.

As to the Russian State Diamond Fund, the defendants contend that the mailing of process to Boris Yeltsin and the Russian State

18

Diamond Fund "c/o Deputy Minister of Culture Mikhail Schvidkoy" was not substantial compliance with section 1608(b), which permitted service via a letter rogatory, through the clerk of the court, or as directed by the court. See 28 U.S.C. § 1608(b)(3). The Magness descendants, in turn, assert that they substantially complied with section 1608(b)(3)(B), which authorizes service upon an instrumentality of a foreign state by any form of mail requiring a signed receipt. They point out that they sent service papers to the Texas Secretary of State with a request that those documents be forwarded to the "Russian Ministry of Culture/Russian State Diamond Fund." Finally, the Magness descendants contend that all defendants had actual notice of the suit, as evidenced by the Russian Federation's appearance at the TRO hearing and the confirmation received by the Texas Secretary of State showing that the return receipt for the service documents had been signed by somebody at the "Russian Ministry of Culture/Russian State Diamond Fund."

As the United States notes, there is no evidence that the Magness descendants included a "notice of suit" in the service documents that allegedly were served. The notice of suit is an integral part of the service requirements upon foreign states, and is "designed to provide a foreign state with an introductory explanation of the lawsuit, together with an explanation of the

19

legal significance of the summons, complaint, and service." H.R. Rep. No. 94-1487, at 12.

Most importantly, there is no evidence to establish that the defendants had actual notice of the suit. The Magness descendants bear the burden of proving that the defendants had actual notice. See, e.g., Straub, 38 F.3d at 454; Hirsch v. Blue Cross, Blue Shield, 800 F.2d 1474, 1477 (9th Cir. 1986). Under the FSIA, proving "actual notice" requires more than a mere showing that somebody in the foreign state knew of the claim. See Sherer, 987 F.2d at 1250 (finding actual notice only because defendant hired counsel and moved to dismiss the complaint).

Because the plaintiffs have not established that they provided the Russian State Diamond Fund actual notice of the suit, substantial compliance with section 1608(b) was lacking.

V

Having determined that the Magness descendants failed to perfect service under section 1608 as to any of the defendants in this case, we now consider the district court's denial of the defendants' Rule 60(b) motion.

In Seven Elves, 635 F.2d at 402, this court held that a district court should consider eight factors when ruling on a Rule 60(b) motion to vacate a default judgment:

20

(1) that final judgments should not lightly be disturbed;
(2) that the Rule 60(b) motion is not to be used as a substitute for appeal;
(3) that the rule should be liberally construed in order to achieve substantial justice;
(4) whether the motion was made within a reasonable time;
(5) whether, if the judgment was a default or a dismissal in which there was no consideration of the merits, the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense;
(6) whether, if the judgment was rendered after a trial on the merits, the movant had a fair opportunity to present his claim or defense;
(7) whether there are intervening equities that would make it inequitable to grant relief; and
(8) any other factors relevant to the justice of the judgment under attack.

Analyzing these factors, we must conclude that the default judgment in favor of the Magness descendants should be vacated as to all three defendants.[19]  The motion to vacate was made within a reasonable time; the motion is not being utilized as a substitute for appeal; the interest in deciding the merits of the case

---

[19]The defendants request that the judgment be vacated under Rule 60(b)(3) or Rule 60(b)(4).  Under Rule 60(b)(3), this court has held that "a party may engage in Rule 60(b)(3) misconduct if he fails to disclose evidence he knows about and the production of such evidence was clearly called for."  Montgomery v. Hall, 592 F.2d 278, 279 (5th Cir. 1979).  The Magness descendants evidently convinced the district court that they had properly served the defendants, even though the State Department repeatedly informed them that service was incomplete. Rule 60(b)(4) authorizes a court to vacate a judgment as "void" when personal jurisdiction is lacking.  Under such circumstances, this court has determined that "the district court has no discretion, the judgment is either void or it is not." Recreational Properties, Inc. v. Southwest Mortgage Serv. Corp., 804 F.2d 311, 313-14 (5th Cir. 1986).

outweigh the interest in finality; and, the diplomatic implications of this case encourage a consideration of the claim on the merits.

The government has emphasized the weighty diplomatic considerations underlying this case, noting that the United States has fought jurisdiction in instances where foreign attorneys have attempted to serve the United States via non-authorized government employees. In its amici brief the United States suggests that it would not consider itself to have been properly served under the attempts utilized by the Magness descendants in this case.[20] In this light, and for the reasons we have explained, we conclude that the default judgment should be vacated, that the case must be remanded, and that the Magness descendants should be allowed a reasonable time to perfect service upon the defendants.

Therefore, the judgment is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.

V A C A T E D and R E M A N D E D.

---

[20]That is, the delivery of a package addressed to "George W. Bush, the White House" to a random federal agency that lacks the responsibility for foreign relations would not provide adequate notice of suit to the United States.

22