# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2012

No. 11-10126

Lyle W. Cayce
Clerk

BLAKE BOX, doing business as Blake Box Company,

Plaintiff - Appellant,

v.

DALLAS MEXICAN CONSULATE GENERAL,

Defendant - Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC 3:08-CV-1010

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Blake Box appeals the district court's ruling that its earlier default judgment against the Dallas Mexican Consulate General was void for lack of subject matter jurisdiction. Because we conclude that the district court abused its discretion in denying Blake Box the opportunity for limited discovery on the issue of whether the Consulate's officials lacked actual authority, we VACATE and REMAND for additional proceedings consistent with this opinion.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10126

I.

In 2006, the Mexican Consulate in Dallas began searching for new office space. Appellant Blake Box alleges the former Ambassador Enriqué Hubbard Urrea (Hubbard) and then Assistant Consul Hugo Juarez-Carillo (Juarez) hired Box on behalf of the Consulate to provide various real estate services in connection with their desire to identify and acquire a new consulate building. Box ultimately located a suitable building within a three-building complex at River Bend Drive.

When the River Bend property owner refused to sell just one of the buildings, the Consulate allegedly agreed to enter a joint venture arrangement in which Box and his investors would buy the entire property and sell back one of the buildings to the Consulate. Box accordingly formed a partnership with investors, negotiated a deal with the property owner, and obtained space plans, construction proposals, and appraisal information, which he provided to the Consulate. In May 2007, the Consulate sent all of Box's documents to Mexico City for approval, and in August, the Consulate communicated with Box to receive additional appraisal information. Then in December 2007, Box learned that the Consulate used Box's plans to complete the same River Bend transaction but with a third-party investor.

On March 11, 2008, Box's lawyer sent a demand letter to Ambassador Hubbard at the Consulate. Two days later, the Consulate's Dallas lawyer Pablo Alvarado responded on behalf of the Consulate, and the lawyers exchanged several letters about Box's demand.

Box sued the Consulate in federal district court on June 16, 2008, alleging breach of contract, fraudulent inducement, breach of fiduciary duty, unjust enrichment, quantum meruit, promissory estoppel, constructive trust, attorney fees, and exemplary damages. On June 22, 2008, a Consulate spokesman told reporters that the Consulate had knowledge of the lawsuit. Box served the

## No. 11-10126

Consulate on July 11, 2008 by delivery of both an English and Spanish translation of the Summons and the Original Complaint to the Secretaria de Relaciones Exteriores, Direccion General de Asuntos Juridicos in Mexico City as required by Article 15 of the Hague Convention.[1] When the Consulate failed to answer or appear, Box's counsel notified Alvarado, the Consulate's Dallas counsel, of the lawsuit and prior service, attaching copies of all the documents served.

On September 19, 2008, the Consulate had still not appeared, and Box requested entry of default judgment. The district court held an evidentiary hearing on September 30, 2009, and signed a default judgment that same day. The district court determined that the elements of the commercial activity exception to the Foreign Sovereign Immunities Act (FSIA) existed because the activity was commercial in nature and there was a sufficient nexus between the activity and the United States. *See* 28 U.S.C. § 1605(a)(2) ("A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . .").

After the entry of default judgment, Ambassador Hubbard left his position as Head of Mission on October 7, 2009. The new consular general, Ambassador Cué-Vega (Cué), was appointed on November 16, 2009. At a press conference that same day, Cué learned of the default judgment for the first time.[2]

On March 23, 2010, the Consulate moved to set aside the default

---

[1] As discussed below, the parties dispute whether the service complied with all of the conditions of the Hague Convention. Specifically, the Consulate argues that the Mexican government never issued a certificate acknowledging receipt of service.

[2] As evidence of the incoming Cué's lack of knowledge, the Consulate relies on an affidavit from Deputy Consul General Alberto Bernal Acero (Bernal), who served as the Acting Consul General during the interim, that states Cué "was previously unaware of the Default Judgment." However, Bernal's affidavit does not say that former Ambassador Hubbard or Bernal himself had been unaware of the proceedings. Indeed, the Consulate conceded to the district court that it was not challenging that it had received actual notice of the lawsuit.

3

judgment. Specifically, the Consulate argued that the judgment was void under Rule 60(b)(4) because the district court lacked subject matter and personal jurisdiction, and that the judgment was the result of mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1). As to subject matter jurisdiction, the Consulate argued that the commercial activity exception requires the state actor to possess actual authority from the foreign government, that Mexican law predicates actual authority to purchase real estate on officials in Mexico City authorizing the purchase, and that Mexico City never authorized any transaction with Box.

The Consulate introduced the following evidence to show that the Consulate officials lacked the authority to act on behalf of the Mexican government: (1) Mexico's Internal Standards for the Administration of Mexican Representation's Real Property Abroad (the Standards); (2) Mexico's Procedures Manual for the Acquisition and/or Leasing of Real Property Assets Abroad (the Procedures); and (3) an affidavit by Deputy Consul General Bernal.

The Standards provide:

> It is mandatory that not only RME's[3] follow and apply these Standards, but also the Ministry personnel involved in the process of acquisition and leasing of property and of contracting public works and their related services. . . .
> All acquisition of property as well as leasing or any other transaction involving the disposition of property, regardless of the amount they represent, will require the OM's[4] authorization.

The Procedures state that the Consulate "must not sign any letter of intent, pure and financial sales and leasing contracts" involving real property "without the opinion of Legal Counsel and the authorization of the Chief

---

[3] RME is an abbreviation for "Mexican Representations Abroad" or the Consulate.

[4] OM is an abbreviation for the Chief Clerk of the General Office of Real Property Assets and Material Resources.

Clerk."[5]

The Bernal affidavit quoted the above Standards and Procedures and explained that compliance with them is mandatory under Mexican law. Then, the affidavit made the following statements: "The Chief Clerk of the General Office of Real Property Assets and Material Resources never approved of any agreement with Blake Box" and "[n]either former Ambassador Enriqué Hubbard Urrea, Mr. Hugo Juarez-Carillo, or anyone else at the Consulate had authority to bind the Consulate or the government of Mexico to a contract with Blake Box." The Consulate relied on this affidavit to show that its officials lacked actual authority for a transaction with Box.

The district court agreed, setting aside the default judgment for lack of subject matter jurisdiction. The district court did not reach the Consulate's alternative arguments of lack of personal jurisdiction due to improper service or of the judgment resulting from mistake or excusable neglect. Finally, the district court denied Box's request for limited discovery on subject matter jurisdiction "[b]ecause the Court did not place the burden on Plaintiff to establish subject matter jurisdiction."

## II.

Box argues the district court erred in denying limited discovery on the issue of subject matter jurisdiction. He maintains that the answer to the question of whether the Chief Clerk authorized the transaction "lies within the exclusive custody or control of the defendant." The district court ruled that "[b]ecause the Court did not place the burden on Plaintiff to establish subject matter jurisdiction, Plaintiff's alternative request to conduct discovery to prove subject matter jurisdiction is DENIED." This rationale for denying discovery

---

[5] The Consulate argues in its brief that the Standards and Procedures require "express written approval from the proper Mexican authority." Nothing in the cited portions of the Standards and Procedures or the accompanying affidavit state that the approval must be written.

conflicts with the district court's ruling against Box that "Plaintiff provides no evidence of authorization or approval from the Chief Clerk, nor does he aver that such approval exists."

District courts enjoy "broad discretion in all discovery matters" and "such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000) (internal quotation marks omitted). Nevertheless, when "there is a factual question regarding a foreign sovereign's entitlement to immunity [under the FSIA], and thus a factual question regarding a district court's jurisdiction, the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Hansen v. PT Bank Negara Indon. (Persero), TBK*, 601 F.3d 1059, 1063–64 (10th Cir. 2010) (internal quotation marks omitted); *see also McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996) ("When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss."). The Consulate responds that extensive jurisdictional discovery must be limited in the sovereign immunity context to protect the government's immunity from the costs of litigation. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992) ("Several courts have observed the tension between permitting discovery to substantiate exceptions to statutory sovereign immunity and protecting a sovereign's . . . legitimate claim to immunity from discovery."). Box replies that in each of the cases cited by the Consulate to illustrate the need to limit discovery in the FSIA context the district courts had in fact allowed some tailored form of jurisdictional discovery.

The Consulate cites *Arriba* for the proposition that district courts have the discretion to deny discovery on jurisdiction. In that case, the plaintiff brought "generalized conspiratorial allegations" that could not "be proved without massive, intrusive discovery in Mexico on highly sensitive domestic issues." *Arriba*, 962 F.2d at 536. The court held that the plaintiff failed to allege a commercial activity, and distinguished cases that allowed limited jurisdictional discovery where the plaintiffs had alleged specific facts that would establish FSIA jurisdiction. *Id.* at 537. "At the very least, discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Id.* at 534. Unlike the case in *Arriba*, Box disputes and seeks discovery on the discrete issue that Hubbard and Juarez were authorized to purchase the consulate building, which if true would establish FSIA jurisdiction.

The Consulate also cites *Kelly* as a Fifth Circuit case that emphasizes the importance of limiting discovery when dealing with FSIA immunity. There, the plaintiffs argued that the district court should have allowed additional jurisdictional discovery prior to dismissal. *Kelly*, 213 F.3d at 855. However, this court affirmed the district court's denial of more discovery because the plaintiffs "did *not* take advantage of the ample opportunity to conduct discovery" earlier in the proceedings and the district court must only provide "an *opportunity* for discovery." *Id.* (emphasis in original). Rather than supporting the Consulate's position, *Kelly* suggests abuse of discretion where the district court did not provide an opportunity for limited discovery in the first instance.

We are cognizant of the district court's broad discretion over discovery issues and the heightened concern in the FSIA immunity context. Nevertheless, we hold that the district court abused its discretion here because actual authorization is a discrete issue conducive to limited discovery, the

relevant documents reside exclusively with the defendant, and Box never received an opportunity for even narrowly tailored discovery.[6]  To hold otherwise would allow any foreign government to escape jurisdiction by simply attesting in an affidavit that the requisite authorization was never provided. Finally, the district court's stated rationale for denying discovery—that the plaintiff did not bear the burden—contradicts the court's subsequent focus on the plaintiff's lack of evidence of actual authority.

## III.

The Consulate also argued to the district court that the default judgment was void under Rule 60(b)(4) for lack of personal jurisdiction, and that the judgment could be set aside under Rule 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect.  The district court did not reach these arguments, and the Consulate reiterates them on appeal as alternative grounds for affirming the district court.

## A.

First, the Consulate contends that the district court lacked personal jurisdiction because Box's service was inadequate under the Hague Convention. Specifically, the Consulate complains that although Box sent the correct documents to the correct agency, the Hague Convention requires the foreign state to issue a certificate indicating service on itself, which Mexico never did in this case.  Thus, the sole argument for lack of personal jurisdiction is that the Mexican government did not issue this certificate.

Service of process under the FSIA is governed by 28 U.S.C. § 1608.  The relevant provision allows Box to serve the Consulate "by delivery of a copy of

---

[6] We also note that the fact the Consulate subsequently purchased the exact property suggests that some form of actual authority might have existed for the transaction. Interestingly, the Bernal affidavit produced by the Consulate does not unequivocally deny that the Chief Clerk authorized the transaction more generally, but rather narrowly emphasized that the Chief Clerk "never approved of any agreement with Blake Box."  Given these circumstances, limited discovery is all the more appropriate.

the summons and complaint in accordance with an applicable international convention on service of judicial documents." § 1608(a)(2). Moreover, "plaintiffs must strictly comply with the statutory service of process provisions" of § 1608(a), and actual notice is insufficient. *Magness v. Russian Fed'n*, 247 F.3d 609, 616 (5th Cir. 2001).

The Consulate argues that the Hague Convention, as the applicable international convention, requires the Central Authority of the foreign government to complete a certificate stating "that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered." Hague Convention Art. 6, Nov. 15, 1966, 20 UST 361. The Convention allows for default judgment without the certificate if "every reasonable effort has been made to obtain it through the competent authorities." *Id.* Art. 15. The Consulate cites two district court cases from California where failure to acquire the certificate rendered the service of process incomplete. *See OGM, Inc. v. Televisa, S.A. de C.V.*, 2009 WL 1025971, at *3 (C.D. Cal. April 15, 2009); *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 660083, at *4 (N.D. Cal. Feb. 28, 2007) (finding that a "single call" to the Antigua Governor's office does not constitute "every reasonable effort" to obtain the certificate). In both of these cases, however, the plaintiffs sought to serve a complaint against foreign corporations rather than the foreign government itself, rendering the certificate explaining service to the corporation more important than explaining service on itself. More importantly, the fact that the foreign government is the defendant—whose lawyer had already contacted Box's legal counsel about this dispute—means that any direct communication with Mexican officials would constitute an ethical violation. Tex. R. Prof. Conduct 4.02. Therefore, Box made "every reasonable effort" when it took the only step ethically permitted by informing Mr. Alvarado of the case and providing him a duplicate of all the service documents, making service

proper under the Hague Convention.

Moreover, we note that courts have found "that service of process was properly perfected under the Hague Convention, notwithstanding the failure of the Central Authority to return a Certificate" when the plaintiff attempts in good faith to comply with the Hague Convention and the defendant had sufficient notice "that no injustice would result." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2nd Cir. 2005) (citation omitted). After all, "[i]t was certainly not [Box's] fault that the [Mexican] authorities did not return a formal Certificate." *Id.* The Consulate does not dispute that Box sent the correct documents to the correct office, and the record indicates that both Mexico and the Consulate had notice of the lawsuit and an ability to defend.[7] In fact, Box argues that the Consulate's own motion to set aside the default judgment violates Article 16 of the Hague Convention that authorizes judges to relieve defendant from failure to appeal only if the defendant "did not have knowledge of the [service] in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal." Hague Convention Art. 16(a).[8]

---

[7] On October 2, 2008, the Assistant Director of International Jurisdiction for Mexico, Bertha Sanchez Miranda, wrote a letter to the process server acknowledging receipt of service but claiming she lacked the means to notify the consulate because the Consulate was not "within the jurisdiction." The Consulate spokesman had already acknowledged its awareness of the lawsuit. At the district court, the Consulate admitted that they had knowledge of the lawsuit:

> The Court: So do you disagree that Bertha Sanchez-Miranda received this packet? Ms. McComas: Somebody there received it and gave it to her, or she received it herself. I don't know. I don't know how it got to her. Clearly, someone in that office received it, and I don't dispute that. I want to make one other thing clear. I'm also not disputing we had knowledge of the lawsuit, and I think that's clear from what we just said. Because I think Mr. Dennis misunderstood me when he said no knowledge of the lawsuit until 2009. What I'm saying is that I can't tell you why they didn't act on it. I think they did have knowledge.

[8] "When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the

B.

Finally, the Consulate argues the judgment should be set aside for mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1), or "for any other reason that justifies relief" under Rule 60(b)(6).

Under this heading, the Consulate seeks to raise what it claims are "multiple meritorious defenses to Box's claims." These include the statute of frauds for the oral agreement, failure to receive Secretary of State approval via the Foreign Missions Act,[9] and excessiveness of the damages award. Litigating such substantive arguments at this late hour is untimely and unfair. "Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Although a defendant in federal court "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment *on jurisdictional grounds*," *Jackson*, 302 F.3d at 522 (emphasis added) (citation omitted), the defendant should not be able to sandbag a default judgment with ordinary defenses on the merits.[10]

---

judgment if the following conditions are fulfilled—(a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and (b) the defendant has disclosed a prima facie defense to the action on the merits." Hague Convention Art. 16.

[9] "The Secretary shall require any foreign mission . . . to notify the Secretary prior to any proposed acquisition, or any proposed sale or other disposition, of any real property by or on behalf of such mission. The foreign mission (or other party acting on behalf of the foreign mission) may initiate or execute any contract, proceeding, application, or other action required for the proposed action [only after giving notification]." 22 U.S.C. § 4305(a)(1).

[10] The Consulate suggests in its brief that the new Ambassador responded expeditiously when he entered office and learned of the past default judgment. However, the Consulate concedes that it had actual notice of the lawsuit since the initial filing in 2008. There is simply no basis on this record for arguing surprise or excusable neglect.

No. 11-10126

IV.

The district court abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority. For this reason, we VACATE the district court's ruling that its earlier default judgement was void for lack of subject matter jurisdiction, and REMAND for limited discovery and further proceedings in accordance with this opinion.