**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 14-1585**

─────────────

CHARLES T. LEE,

        Plaintiff - Appellant,

    v.

NORFOLK SOUTHERN RAILWAY COMPANY,

        Defendant – Appellee.

------------------------

SECRETARY OF LABOR,

        Amicus Supporting Appellant,

ASSOCIATION OF AMERICAN RAILROADS,

        Amicus Supporting Appellee.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, District Judge. (1:13-cv-00004-MR-DSC)

─────────────

Argued: May 12, 2015          Decided: September 17, 2015

─────────────

Before NIEMEYER, DIAZ, and FLOYD, Circuit Judges.

─────────────

Reversed and remanded by published opinion. Judge Floyd wrote the opinion, in which Judge Niemeyer and Judge Diaz joined.

─────────────

**ARGUED**: William Cox Tucker, Jr., MAPLES TUCKER & JACOBS, Birmingham, Alabama, for Appellant. John Bruce Lewis, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellee. Donald J. Munro, JONES DAY, Washington, D.C., for Amicus Association of American Railroads. Rachel Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Secretary of Labor. **ON BRIEF**: Rachel S. Decker, CARRUTHERS & ROTH P.A., Greensboro, North Carolina, for Appellant. M. Daniel McGinn, Nicole A. Crawford, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina; Dustin M. Dow, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellee. M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, William C. Lesser, Deputy Associate Solicitor, Megan E. Guenther, Counsel for Whistleblower Programs, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Secretary of Labor. Louis P. Warchot, Daniel Saphire, ASSOCIATION OF AMERICAN RAILROADS, Washington, D.C.; Ronald M. Johnson, M. Carter DeLorme, JONES DAY, Washington, D.C., for Amicus Association of American Railroads.

---

FLOYD, Circuit Judge:

This appeal arises from two lawsuits filed by Charles Lee against his employer, Norfolk Southern Railway Company (NS). In the first lawsuit, Lee claimed that NS suspended him on the basis of his race in violation of 42 U.S.C. § 1981. After the district court granted NS summary judgment, Lee filed his second lawsuit, claiming that NS in fact suspended him for reporting rail safety offenses, in violation of the whistleblower protection provision of the Federal Railroad Safety Act (FRSA). The district court again granted summary judgment to NS, holding that Lee's second lawsuit was barred by the FRSA's "Election of Remedies" provision, which provides that "[a]n employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." 49 U.S.C. § 20109(f).

We disagree. As explained below, a suspension on the basis of race is not "the same allegedly unlawful act" as a suspension in retaliation for FRSA whistleblowing. Accordingly, we vacate the district court's judgment and remand for further proceedings.

I.

Charles Lee works as carman for NS in Asheville, North Carolina. As a carman, he is responsible for inspecting

3

railcars to identify potential service-related defects. In July 2011, NS suspended Lee without pay for six months. The parties dispute the reason for the suspension. NS claims it suspended Lee because he drank a beer on duty and then operated a company-owned automobile in violation of company policy; Lee, who is African-American, claims the suspension was motivated both by his race and in retaliation for federal rail safety whistleblowing.

On September 21, 2011, Lee filed his first lawsuit, alleging that the suspension constituted racial discrimination in violation of 42 U.S.C. § 1981. In the complaint, Lee alleged several instances where NS favored white carmen over African-American carmen. First, Lee contended that NS trained and promoted white carmen pursuant to a collective bargaining agreement with the carman's union, but denied African-American carmen those same opportunities. Second, Lee alleged that his white supervisor also drank beer while on duty, and the supervisor was not punished. Finally, Lee alleged several instances of racial harassment, such as his co-workers hanging a noose in his locker, threatening his children, and calling him racial slurs.

Less than two months after filing his first lawsuit, Lee filed a complaint with the Occupational Safety and Health Administration (OSHA) under the FRSA's whistleblower provision,

4

49 U.S.C. § 20109.  That provision prohibits railroad carriers from, among other things, discriminating against employees who "refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security."  Id. § 20109(a)(2).  According to Lee, federal law required him to identify – or "bad order" – defective rail cars for repair.  NS capped the number of cars he could tag with such orders, however, effectively requiring him to violate federal law.  When he refused to comply with the caps, Lee alleges that NS suspended him in July 2011.

During discovery in the first lawsuit, NS's attorney sought to depose Lee about the OSHA whistleblower complaint, believing it to be "part of [Lee's] lawsuit here [in federal district court] too."  J.A. 331.  Lee's attorney objected, noting that Lee did not bring his FRSA claims in his first lawsuit, because he was first required to exhaust his administrative remedies before OSHA and the Secretary of Labor.[1]  Although the parties

---

[1] To pursue a FRSA whistleblower complaint under Section 20109, an employee must first file a complaint with OSHA, which investigates the complaint and issues findings and a preliminary order.  See 49 U.S.C. § 20109(d)(1), (2).  If either party objects to OSHA's determination, it may then seek a hearing and final order from the Department of Labor.  The FRSA also contains a "kick-out" provision allowing an employee to bring his FRSA action in a district court if the "Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee."  Id. § 20109(d)(3).  Before using the kick-out
(Continued)

ultimately agreed to defer discussing the OSHA complaint, they left the door open to returning to it when the matter was ripe. Id. (NS's attorney agreeing that if either party ultimately decided to address the OSHA whistleblower complaint in the first lawsuit, "then arrangements will be made at a later time to allow that party to get into it").

On September 21, 2012, OSHA dismissed Lee's whistleblower complaint after concluding that NS did not commit any FRSA violations. Lee timely objected, and sought a hearing before a Department of Labor administrative law judge (ALJ). On November 20, 2012, Lee gave notice to the ALJ that he intended to exercise his right to file a lawsuit under the FRSA's kick-out provision. Lee did not, however, seek to amend his Section 1981 complaint to add his FRSA claims. He also did not notify the district court that he intended to file a lawsuit under the FRSA.

Accordingly, when the district court granted NS summary judgment on December 12, 2012, the order addressed only Lee's Section 1981 claims, not his FRSA claims. First, the district court concluded that, to the extent Lee's claims were based on the collective bargaining agreement, they were preempted by the

provision, the employee must provide 15 days' notice to the Department of Labor that he intends to file a lawsuit. Id.; 29 C.F.R. § 1982.114(a), (b).

6

Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., which requires arbitration of such claims. The court further concluded that NS was not vicariously liable for the individual instances of racial harassment by Lee's co-workers (including the incident with the noose and use of racial slurs).

Less than a month after the district court granted NS summary judgment in the first lawsuit, Lee filed his FRSA retaliation lawsuit. The allegations in this second lawsuit largely track those in Lee's OSHA complaint. Lee again alleged that he was tasked with tagging defective train cars with "bad orders," but that NS capped the number of cars he could tag. In doing so, Lee contends NS pressured him to "violate federal rail safety regulations and laws and violate NS's own safety and mechanical department rules." J.A. 10. Notably, the specific retaliatory acts are identical to the retaliatory acts alleged in Lee's first complaint, including that NS (i) refused to properly train and promote him; (ii) allowed him to be racially harassed by his co-workers; and (iii) suspended him on July 2011, purportedly for drinking a beer while on the job.

On May 20, 2014, the district court granted summary judgment to NS on Lee's FRSA claims, concluding that Lee's first lawsuit for racial discrimination under Section 1981 constituted an election of remedies under FRSA Section 20109(f) that barred

7

Lee's subsequent FRSA retaliation action.  Lee then timely noted this appeal.

## II.

This appeal turns on the meaning of the FRSA's Election of Remedies provision.  See 49 U.S.C. § 20109(f).  We begin with a brief summary of the relevant statutory background to provide context for the parties' arguments.

Congress enacted the FRSA in 1970 to promote safety in railroad operations.  See 49 U.S.C. § 20101 et seq.  When it was enacted, the FRSA did not contain a whistleblower provision. In 1980, Congress amended the FRSA to add such a provision to prohibit railroads from retaliating against employees who provided information about violations of federal railroad safety laws.  See Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, § 10, 94 Stat. 1811 (1980); Rayner v. Smirl, 873 F.2d 60, 63-64 (4th Cir. 1989).  Employees who sought to bring an FRSA retaliation claim under this new provision were required to do so under the mandatory arbitration procedure established under the RLA.  See Pub. L. No. 96-423, § 10, sec. 212(c)(1).  The 1980 amendments also added the Election of Remedies provision, which required an employee seeking protection "under any other provision of law in connection with the same allegedly unlawful act of an employer" to choose

8

"either to seek relief pursuant to this section [the FRSA] or pursuant to such other provision of law." Pub. L. No. 96-423, § 10, sec. 212(d).

In 2007, Congress again amended the FRSA to "enhance[] administrative and civil remedies for employees" and "ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers." H.R. Conf. Rep. No. 110-259, at 348 (2007), reprinted in 2007 U.S.C.C.A.N. 119, 180-81, 2007 WL 2162339. Among other changes, Congress eliminated the requirement that retaliation claims be resolved in arbitration under the RLA. In its place, Congress established an administrative procedure under which retaliation complaints are first resolved by OSHA and the Secretary of Labor (and then in the district courts after exhausting these administrative procedures).[2]

Congress also added provisions stating that nothing in the FRSA's retaliation provision preempted or diminished other rights of employees and that the rights provided by FRSA could not be waived. See 49 U.S.C. § 20109(g), (h). But Congress did not remove the Election of Remedies provision, which, in its

---

[2] Specifically, the FRSA now incorporates by reference the rules and procedures applicable to whistleblower cases brought under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century. See 49 U.S.C. § 20109(d)(2)(A) (citing 49 U.S.C. § 42121(b)).

9

current form, prohibits an employee from "seek[ing] protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." 49 U.S.C. § 20109(f).

III.

In its summary judgment order, the district court divided the Election of Remedies provision into four discrete elements: (1) an employee (2) may not seek protection (3) under the FRSA and another provision of law (4) for the same allegedly unlawful act of the railroad carrier. Because the district court concluded that Lee did not contest the first, second, and fourth elements, the court devoted most its analysis to the third element — that is, to its conclusion that Lee's first lawsuit under Section 1981 was an attempt to "seek protection under another provision of law."

Contrary to the district court's finding, Lee expressly argued in opposing summary judgment that a suspension on the basis of race is not "the same allegedly unlawful act" as a suspension in retaliation for FRSA whistleblowing. J.A. 554. Lee also renewed that argument here on appeal. Appellant's Br. at 47-48. Accordingly, we find that Lee properly preserved this argument for appeal. See United States v. Zayyad, 741 F.3d 452, 459 (4th Cir. 2014) ("To preserve an argument on appeal, the

10

[party] must object on the same basis below as he contends is error on appeal."). We therefore turn to the merits of Lee's argument.

IV.

This appeal presents a question of statutory interpretation, which we review de novo. EEOC v. Great Steaks, Inc., 667 F.3d 510, 519 (4th Cir. 2012). In construing a statute's meaning, we "begin, as always, with the language of the statute." Duncan v. Walker, 533 U.S. 167, 172 (2001). "In that regard, we must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." Ignacio v. United States, 674 F.3d 252, 254 (4th Cir. 2012) (citation omitted). If the plain language is unambiguous, we need look no further. Id. On the other hand, if the text of a statute is ambiguous, we look to "other indicia of congressional intent such as the legislative history" to interpret the statute. CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 53 (4th Cir. 2011) (citation omitted).

A statute is ambiguous if it "lends itself to more than one reasonable interpretation." Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir. 2004). We determine the "plainness or ambiguity of statutory language . . . by reference to the language itself, . . . the specific

11

context in which that language is used, and the broader context of the statute as a whole." Yates v. United States, 135 S. Ct. 1074, 1081-82 (2015) (citation and quotation omitted).

As set forth below, we conclude that the Election of Remedies provision is unambiguous because it is susceptible to only one reasonable interpretation – that a suspension on the basis of race is not "the same allegedly unlawful act" as a suspension in retaliation for FRSA whistleblowing. And even if we did find the provision ambiguous, we would still reverse because the legislative history and context of the statute demonstrates that the provision does not sweep as broadly as NS suggests.

A.

We begin with the plain language of the statute. Whether the FRSA's Election of Remedies provision bars Lee's suit depends on the meaning of the phrase "the same allegedly unlawful act." The words in this phrase are not defined in the FRSA or in any other relevant statutory provision. Accordingly, we give the words their ordinary dictionary meanings. Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2002 (2012).

Lee concedes that the "act" he challenges – his July 2011 suspension – is the same in both lawsuits. But the Election of

12

Remedies provision applies to "the same allegedly unlawful act" – not merely "the same act." And Lee's suspension standing alone is not "unlawful." Rather, to become unlawful, the suspension must have (of course) violated a law. See Black's Law Dictionary 1771 (10th ed. 2014) (defining "unlawful act" to mean "[c]onduct that is not authorized by law; a violation of a civil or criminal law").

In the first lawsuit then, the "allegedly unlawful act" was the suspension on the basis of race in violation of Section 1981; in the second lawsuit, the "allegedly unlawful act" was the suspension on the basis of retaliation for Lee's whistleblowing regarding rail safety violations. These are distinct causes of action with different elements and burdens of proof. Indeed, the "burden-shifting framework that is applicable to FRSA cases is much easier for a plaintiff to satisfy than the McDonnell Douglas standard" applicable to Section 1981 claims. Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 159 (3d Cir. 2013); see also Cash v. Norfolk S. Ry. Co., No. 6:13-CV-00056, 2015 U.S. Dist. LEXIS 4293, at *26-27 (W.D. Va. Jan. 14, 2015) (same).[3]

---

[3] Assuming Lee could make a prima facie case of discrimination under the McDonnell Douglas framework, NS could rebut Lee's prima facie case if it could articulate a "legitimate, nondiscriminatory reason" for the suspension. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 251, n. 9 (4th (Continued)

13

In short, the "act" may be the "same" in both lawsuits, but the "act" is "allegedly unlawful" for fundamentally different reasons. Under the ordinary meaning of the statute then, a suspension on the basis of race and a suspension on the basis of whistleblowing are not the "same allegedly unlawful act." See Black's Law Dictionary 1541 (10th ed. 2014) (defining "same" to mean "[i]dentical or equal; resembling in every relevant respect"); see also Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/same (defining "same" as "resembling in every relevant respect") (saved as ECF opinion attachment).

NS disagrees, though its interpretation hinges more on the phrase's grammar than on the meaning of its words. According to NS, the word "same" cannot modify "unlawful" because those words are parallel adjectives that independently or separately modify the verb "act." Under this reading, the Election of Remedies provision applies whenever "a single act is 'allegedly unlawful'

---

Cir. 2015) (citation omitted). Lee would then be required to prove "disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003).

In contrast, under the FRSA's burden-shifting scheme, if Lee could establish a prima facie case, NS would then be liable unless it could prove "by clear and convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of that behavior." 49 U.S.C. § 42121(b)(2)(B)(ii).

14

for multiple different reasons." Assoc. of Am. R.R.'s Amic. Br. at 8-9.[4]

While creative, this argument creates its own grammatical issues. For example, according to several widely respected style guides, adjectives that independently modify a noun must be separated by a comma. See The Chicago Manual of Style § 6.33 (16th ed. 2010); see also William A. Sabin, The Gregg Reference Manual, § 123(c) (11th ed. 2008). A comma should not be used, however, if the second adjective and the noun can be thought of as a single unit or phrase, because in that scenario the first adjective modifies the entire phrase. Chicago Manual of Style § 6.33; see also Gregg Reference Manual § 169 ("When two adjectives precede a noun, the first adjective may modify the combined idea of the second adjective plus the noun. In such cases do not separate the adjectives by a comma.").

---

[4] NS attempts to support this argument by citing dicta from a non-binding, out of circuit, unpublished district court decision. See Sereda v. Burlington N. Santa Fe R.R. Co., Civil No. 4:03-CV-10431, 2005 WL 5892133, at *4 (S.D. Iowa Mar. 17, 2005) ("The [election of remedies] provision is addressed not to the character or motivation of the employer's allegedly unlawful act, but to the act itself."). The Sereda court does not cite any case law supporting this reasoning. Nor could it, as no other case appears to have reached the same result. Moreover, Serada made this statement in dicta in the context of concluding that FRSA preempted state law claims – a conclusion that Congress overruled in 2007 when it clarified that FRSA does not preempt state law whistleblower claims. Accordingly, we decline to follow Sereda here.

15

This distinction supports Lee's interpretation. Congress did not use a comma between "same" and "allegedly unlawful," thus indicating that those words do not independently modify "act." Moreover, Black's Dictionary defines the words "unlawful act" together, further indicating that, as a term of art, those words act as a single unit or phrase. Black's Law Dictionary 1771 (10th ed. 2014).[5] Accordingly, under the grammatical rules set forth above, "same" is an adjective modifying the phrase "unlawful act."

Of course, we do not mean to suggest that this appeal turns entirely on punctuation. As the Supreme Court has recognized, however, "the meaning of a statute will typically heed the commands of its punctuation". See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 454-55 (1993). That is true here: Congress's decision to omit a comma between "same" and "allegedly unlawful" is wholly consistent with the plain meaning of the phrase. Even if grammatical rules supported this result – and as discussed above, they do not – we would decline to read the phrase in a manner so plainly contrary to its ordinary meaning.

---

[5] According to the Chicago Manual of Style, an adjective and noun should be treated as a single phrase – a so-called "compound" – when the phrase has been "accepted into the general vocabulary and can be found in the dictionary . . . ." Chicago Manual of Style § 7.78.

16

At bottom, both the definitions of the words "the same allegedly unlawful act" and accepted grammatical rules demonstrate that the Election of Remedies provision does not prohibit Lee's second lawsuit. And because Congress has spoken clearly, no further analysis is required. The plain meaning of the statute settles the issue. See Ignacio, 674 F.3d at 257 ("[A]bsent an ambiguity in the words of a statute, our analysis begins and ends with the statute's plain language.").

B.

Even if we did find that NS's grammatical argument rendered the Election of Remedies provision ambiguous, we would still reverse.

According to the Secretary of Labor (appearing as an amicus on Lee's behalf), both the statutory context and legislative history make clear that the Election of Remedies provision only requires an employee to choose between proceeding under the FRSA or another law prohibiting retaliation for the same types of rail safety or security-related whistleblowing addressed in the FRSA. In other words, the provision does not require a choice between the FRSA and statutes aimed at curbing racial discrimination. We agree.

As noted above, when the FRSA was enacted in 1970, it did not contain a whistleblower provision. Despite this omission,

17

railroad employees could still seek protection under Section 11(c) of the Occupational Safety and Health Act (OSH Act), which protects workers in all industries from retaliation for filing a complaint, instituting a proceeding, testifying, or exercising rights related to safety and health in the workplace. See 29 U.S.C. § 660(c). The OSH Act merely acts as a default, however. "Where Congress has enacted an industry-specific statute conferring authority over working conditions on another agency . . . the OSH Act does not apply." Power Fuels, LLC v. Fed. Mine Safety & Health Review Comm'n, 777 F.3d 214, 216-217 (4th Cir. 2015); see also 29 U.S.C. § 653(b)(1). The Federal Rail Administration (FRA) is one such agency, as it is authorized to regulate railroads, including workplace safety. 49 U.S.C. § 20103(a); 49 C.F.R. § 1.89.

The FRA does not, however, exercise exclusive authority over all aspects of railroad employee workplace safety. In 1978, the FRA issued a Policy Statement clarifying the relationship between the FRA and the OSH Act in this context. Railroad Occupational Safety and Health Standards; Termination, 43 Fed. Reg. 10583 (March 14, 1978). As set forth in that statement, the FRA explained that it decided to exercise its regulatory authority to regulate workplace safety only in the area of "railroad operations," which "refers to the movement of equipment over the rails." Id. The FRA explained that it would

18

not preempt OSHA's jurisdiction over workplace safety in other parts of the railroad industry, such as in "railroad yards, shops, and associated offices." Id.

This dichotomy seems to have created an unintended regulatory gap: a railroad employee could sue under the OSH Act's retaliation provision if the alleged safety violation occurred in railroad yards, shops, and offices, but could not do so if the violation occurred in connection with the movement of equipment over the rails. In 1980, Congress appears to have filled this gap by amending the FRSA to add a whistleblower provision similar to Section 11(c) of the OSH Act. In doing so, Congress also added the Election of Remedies provision. According to the member of Congress who managed the bill in the House of Representatives, the Election-of-Remedies provision was intended to

> clarify[] the relationship between the remedy provided here and a possible separate remedy under [the OSH Act]. Certain railroad employees, such as employees working in shops, could qualify for both the new remedy provided in this legislation, or an existing remedy under [the OSH Act]. It is our intention that pursuit of one remedy should bar the other, so as to avoid resort to two separate remedies, which would only result in unneeded litigation and inconsistent results.

126 Cong. Rec. 26532 (Sept. 22, 1980) (statement of Rep. Florio) (emphasis added).

19

This history supports the Secretary of Labor's assertion that Congress did not intend the Election of Remedies provision to require railroad employees to choose between pursuing a rail safety retaliation claim on one hand, and a racial discrimination claim on the other. Instead, Congress only intended to bar railroad employees from seeking duplicative relief under overlapping anti-retaliation or whistleblower statutes that provide protections similar to the protections in FRSA, such as Section 11(c) of the OSH Act and various state versions of the OSH Act, many of which track Section 11(c) nearly verbatim. See, e.g., Ind. Code Ann. § 22-8-1.1-38.1; cf. N.C. Gen. Stat. §§ 95-128; 95-241.[6]

Congress's addition of subsection (h) in 2007 further supports a narrow interpretation of the Election of Remedies provision. That subsection precludes applying the Election of Remedies provision to "diminish" an employee's rights under "any" law. 49 U.S.C. § 20109(h). NS contends Lee's rights are

---

[6] NS counters that it is unaware of any instance in which a railroad employee has sought to recover under both Section 11(c) of the OSH Act and the FRSA. This argument is misplaced: the question is not whether any employees have tried to recover under both statutes, or even whether they could do so. Rather, the question is whether Congress intended the Election of Remedies provision to address that scenario when enacting the provision in 1980, regardless of whether that scenario ever subsequently became commonplace. And as the above history demonstrates, Congress intended the Election of Remedies provision to address only the potential overlap between the OSH Act, various state versions of the OSH Act, and the FRSA.

20

not diminished under its interpretation, because he can still choose which law he wants to proceed under; he just cannot choose both. But as the Sixth Circuit persuasively explains, the Election of Remedies provision dilutes an employee's rights to some extent whenever it is enforced because "[r]estricting an employee to only one of the numerous arrows in his quiver obviously reduces the number of options available to him." Norfolk S. Ry. Co. v. Perez, 778 F.3d 507, 514 (6th Cir. 2015) ("Under the election-of-remedies provision, in other words, even the option ultimately chosen by the employee is rendered less valuable to him by virtue of what he has given up in order to choose it."). At a minimum then, 49 U.S.C. § 20109(h) suggests that the Election of Remedies provision should not be construed as broadly as NS suggests.

This legislative history and statutory context also support our interpretation of the plain meaning of the statute. Again, the ordinary meaning of the phrase "the same unlawful act" means the act must be unlawful for the same reasons. A termination based on whistleblowing under the FRSA, the OSH Act, and various state versions of the OSH Act satisfies this requirement because each of those statutes is aimed at preventing retaliation for engaging in protected whistleblowing activities regarding safety and health in the workplace. The same is not true for Section

1981, which seeks to curb racial discrimination. Accordingly, the Election of Remedies provision does not bar Lee's lawsuit.

V.

Finally, NS contends that "important federal policies" prohibiting "claim-splitting" support its interpretation of the Election of Remedies provision. The rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 273 F. App'x 256, 265 (4th Cir. 2008) (citation omitted). NS claims the "procedural rules" of Section 20109 – namely the requirement that FRSA claims must first be brought before OSHA and the Department of Labor, and then later in federal district court – "interfere" with claim-splitting rules by making it impossible for a plaintiff to bring FRSA and Section 1981 claims together in a single lawsuit. Thus, NS asserts that the Election of Remedies provision should be read as a "de facto" substitute for the rule against claim-splitting.

We reject this argument for several reasons. First, nothing in the plain language of the Election of Remedies provision suggests that it should be read as a substitute for a rule against claim-splitting. Rather, as set forth above, the provision merely requires employees to choose between proceeding

22

under various workplace safety whistleblower statutes. Second, numerous federal whistleblower statutes contain procedural rules virtually identical to those in the FRSA, yet all but one lack a similar Election of Remedies provision. See, e.g., 49 U.S.C. § 31105 (whistleblower provision in context of commercial motor vehicle safety); 49 U.S.C. § 42121 (same, air safety); 42 U.S.C. § 5851 (same, energy safety).[7]

NS does not explain why Congress would have sought to prevent claim-splitting through the Election of Remedies provision in the rail safety context, but not in the context of commercial vehicle, air, and energy workplace safety. That Congress did not do so strongly indicates that traditional claim-splitting rules apply equally in the federal whistleblower context. Indeed, courts have held as much. See Thanedar v. Time Warner, Inc., 352 F. App'x 891, 898-99 (5th Cir. 2009) (holding that claim-splitting rules barred a plaintiff's lawsuit under Sarbanes-Oxley's whistleblower provision, which contains procedural rules – including a "kick-out" provision – similar to those in the FRSA, where the plaintiff had previously sued for

---

[7] The only exception is the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1131 et seq. See id. § 1142. The NTSSA is modeled on the FRSA, the primary difference being that the NTSAA governs rail safety in the context of commuter railroads, urban rapid transit systems, and short-haul passenger services, unlike the FRSA, which governs rail safety in context of freight rail operations.

23

racial discrimination under Title VII). Nothing suggests a different result is warranted in the FRSA context.

True, under the FRSA's "kick-out" provision, Lee was required to wait 210 days after filing his administrative complaint before bringing his FRSA claim in court. 49 U.S.C. § 20109(d)(3). But nothing required him to bring his Section 1981 lawsuit before the FRSA's waiting period expired. Indeed, under the four-year statute of limitations period applicable to his Section 1981 claim,[8] Lee had ample time to wait until the 210 day period expired, at which point he could have filed his Section 1981 and FRSA claims together in the same lawsuit, thus avoiding a potential claim-splitting defense.

Moreover, because Lee filed his administrative complaint with OSHA on September 21, 2011, the 210-day waiting period expired on March 18, 2012. At that point, Lee could have filed suit under the FRSA and moved to consolidate the claim with his Section 1981 lawsuit, which was still pending. At a minimum, he could have notified the district court that he intended to bring FRSA claims. Instead, Lee waited to file his FRSA lawsuit until <u>after</u> the district court granted summary judgment in his Section 1981 lawsuit. In light of these facts, traditional rules of claim-splitting may well bar Lee's FRSA claim.

---

[8] See <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 382 (2004).

24

On the other hand, an argument could be made that NS acquiesced to splitting the claims when its counsel agreed to defer discussing the FRSA administrative complaint at Lee's deposition in the first lawsuit. See Super Van Inc. v. City of San Antonio, 92 F.3d 366, 371 (5th Cir. 1996) (holding that "a second action may be brought by a plaintiff on the same cause of action if the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein" (internal quotation marks omitted)); see also Rotec Indus. v. Mitsubishi Corp., 348 F.3d 1116, 1119 (9th Cir. 2003) (holding that a party with knowledge of split claim litigation must promptly raise the issue "while both proceedings are pending"). Because the district court did not address this issue, we leave it to that court to decide NS's claim-splitting defense in the first instance on remand. See Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 555 n.9 (4th Cir. 1999) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.").

In any event, the issue on appeal is whether the Election of Remedies provision bars Lee's second lawsuit, not whether traditional claim-splitting rules do so. And as set forth above, the Election of Remedies plainly does not apply here.

25

VI.

For the foregoing reasons, we reverse the district court's order and remand for further proceedings.

<u>REVERSED AND REMANDED</u>