**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2267**

AVINESH KUMAR, Individually and as the Guardian of the Estate and Next Friend of C.K., a minor; JENNIFER CLODFELTER, Individually and as Next Friend of N.C., a minor; JOHN CLODFELTER; GLORIA CLODFELTER; JOSEPH CLODFELTER; SHARLA COSTELOW, Individually and as the Next Friend of E.C. and B.C., minors; GEORGE COSTELOW; DOROTHY COSTELOW; RONALD W. FRANCIS; SANDRA FRANCIS; DAVID FRANCIS; JAMES FRANCIS; SARAH GUANA ESQUIVEL; LOU GUNN; MONA GUNN; ANTON J. GUNN; JAMAL GUNN; JASON GUNN; NOVELLA WIGGINS; DIANE MCDANIELS, Individually and as Next Friend of J.M., a minor; FREDERICKA MCDANIELS-BESS; JESSE NIETO; JAMIE OWENS, Individually and as the Guardian of the Estate and Next Friend of I.M.O., a minor; KENYON EMBRY; TERESA SMITH; HUGH M. PALMER; LEROY PARLETT; ETTA PARLETT, Individually and as Next Friend of H.P., a minor; KERA PARLETT MILLER; MATTHEW PARLETT; KATE BROWN; SEAN WALSH; KEVIN ROY; OLIVIA RUX; ROGELIO SANTIAGO; SIMEONA SANTIAGO; JACQUELINE SAUNDERS, Individually and as the Guardian of the Estate and Next Friend for J.T.S., a minor; ISLEY GAYLE SAUNDERS; GARY SWENCHONIS, SR.; DEBORAH SWENCHONIS; SHALALA SWENCHONIS-WOOD; LORIE D. TRIPLETT, Individually and as the Guardian of the Estate and Next Friend of A.T. and S.R.T., minors; SAVANNAH TRIPLETT; FREDDIE TRIPLETT; THEODIS TRIPLETT; KEVIN TRIPLETT; WAYNE TRIPLETT; THOMAS WIBBERLY; PATRICIA A. WIBBERLY; TONI WIBBERLY; TIMOTHY P. SCEVIOUR, as Personal Representative of the Estates of Kenneth Eugene Clodfelter, Richard Costelow, Lakeina Monique Francis, Timothy Lee Gauna, Cherone Louis Gunn, James Roderick McDaniels, Marc Ian Nieto, Ronald Scott Owens, Lakiba Nicole Palmer; TIMOTHY P. SCEVIOUR, as Personal Representative of the Estates of Joshua Langdon Parlett, Patrick Howard Roy, Kevin Shawn Rux, Ronchester Mananga Santiago, Timothy Lamont Saunders, Gary Graham Swenchonis, Jr., Andrew Triplett and Craig Bryan Wibberly,

    Plaintiffs - Appellees,

and

REED TRIPLETT,

Plaintiff,

and

OLLESHA SMITH JEAN; JACK EARL SWENSON,

Consolidated Plaintiffs,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2269**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Kenneth Eugene Clodfelter; Jennifer Clodfelter, individually and as next friend of N.C., a minor; John Clodfelter; Gloria Clodfelter; Joseph Clodfelter,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2271**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Richard Costelow; Sharla Costelow, individually and as next friend of E. C. and B.C., minors; George Costelow; Dorothy Costelow,

        Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

        Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

        Amicus Supporting Appellant.

**No. 16-2272**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Lakeina Monique Francis; Ronald W. Francis; Sandra Francis; David Francis; James Francis,

        Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

        Defendant - Appellant,

------------------------------

UNITED STATES OF AMERICA,

        Amicus Supporting Appellant.

---

**No. 16-2273**

---

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Timothy Lee Guana; Sarah Guana Esquivel,

       Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

       Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

       Amicus Supporting Appellant.

---

**No. 16-2275**

---

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Cherone Louis Gunn; Lou Gunn; Mona Gunn; Anton J. Gunn; Jason Gunn,

       Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

       Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

       Amicus Supporting Appellant.

**No. 16-2276**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of James Roderick McDaniels; Novella Wiggins; Diane McDaniels, individually and as next friend of J.M. a minor; Fredericka McDaniels-Bess,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2280**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Marc Ian Nieto; Jesse Nieto,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

No. 16-2281

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Ronald Scott Owens; Jamie Owens, individually and as the guardian of the estate and next friend of I.M.O., a minor,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

No. 16-2282

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Lakiba Nicole Palmer; Avinesh Kumar, individually and as the guardian of the estate and next friend of C.K., a minor; Kenyon Embry; Teresa Smith; Hugh M. Palmer; Jack Earl Swenson; Ollesha Smith Jean,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2283**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Joshua Langdon Parlett; Leroy Parlett; Etta Parlett, individually and as next friend of H.P., a minor; Kera Parlett Miller; Matthew Parlett,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant,

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2284**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Patrick Howard Roy; Kate Brown; Sean Walsh; Kevin Roy,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2285**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Kevin Shawn Rux; Olivia Rux,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

**No. 16-2286**

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Ronchester Mananga Santiago; Rogelio Santiago; Simeona Santiago,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

_____

**No. 16-2287**

_____

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Timothy Lamont Saunders; Jacqueline Saunders, individually and as the guardian of estate and next friend of J.T.S., a minor; Isley Gayle Saunders,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

_____

**No. 16-2288**

_____

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Gary Graham Swenchonis, Jr.; Gary Swenchonis, Sr.; Deborah Swenchonis; Shalala Swenchonis-Wood,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

---

**No. 16-2289**

---

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Andrew Triplett; Lorie D.Triplett, individually and as the guardian of estate & next friend of A.T. & S.R.T., minors; Reed Triplett; Savannah Triplett; Freddie Triplett; Theodis Triplett; Kevin Triplett; Wayne Triplett,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

---

**No. 16-2290**

---

TIMOTHY P. SCEVIOUR, as personal representative of the estate of Craig Bryan Wibberly; Thomas Wibberly, Patricia A. Wibberly; Toni Wibberly,

Plaintiff - Appellee,

v.

REPUBLIC OF SUDAN,

Defendant - Appellant.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

_____

**No. 16-2365**

_____

AVINESH KUMAR, Individually and as the Guardian of the Estate and Next Friend of C.K., a minor; JENNIFER CLODFELTER, Individually and as Next Friend of N.C., a minor; JOHN CLODFELTER; GLORIA CLODFELTER; JOSEPH CLODFELTER; SHARLA COSTELOW, Individually and as the Next Friend of E.C. and B.C., minors; GEORGE COSTELOW; DOROTHY COSTELOW; RONALD W. FRANCIS; SANDRA FRANCIS; DAVID FRANCIS; JAMES FRANCIS; SARAH GUANA ESQUIVEL; LOU GUNN; MONA GUNN; ANTON J. GUNN; JAMAL GUNN; JASON GUNN; NOVELLA WIGGINS; DIANE MCDANIELS, Individually and as Next Friend of J.M., a minor; FREDERICKA MCDANIELS-BESS; JESSE NIETO; JAMIE OWENS, Individually and as the Guardian of the Estate and Next Friend of I.M.O., a minor; KENYON EMBRY; TERESA SMITH; HUGH M. PALMER; LEROY PARLETT; ETTA PARLETT, Individually and as Next Friend of H.P., a minor; KERA PARLETT MILLER; MATTHEW PARLETT; KATE BROWN; SEAN WALSH; KEVIN ROY; OLIVIA RUX; ROGELIO SANTIAGO; SIMEONA SANTIAGO; JACQUELINE SAUNDERS, Individually and as the Guardian of the Estate and Next Friend for J.T.S., a minor; ISLEY GAYLE SAUNDERS; GARY SWENCHONIS, SR.; DEBORAH SWENCHONIS; SHALALA SWENCHONIS-WOOD; LORIE D. TRIPLETT, Individually and as the Guardian of the Estate and Next Friend of A.T. and S.R.T., minors; SAVANNAH TRIPLETT; FREDDIE TRIPLETT; THEODIS TRIPLETT; KEVIN TRIPLETT; WAYNE TRIPLETT; THOMAS WIBBERLY; PATRICIA A. WIBBERLY; TONI WIBBERLY; TIMOTHY P. SCEVIOUR, as Personal Representative of the Estates of Kenneth Eugene Clodfelter, Richard Costelow, Lakeina Monique Francis, Timothy Lee Gauna, Cherone Louis Gunn, James Roderick McDaniels, Marc Ian Nieto, Ronald Scott Owens, Lakiba Nicole Palmer; TIMOTHY P. SCEVIOUR, as Personal Representative of the Estates of Joshua Langdon Parlett, Patrick Howard Roy, Kevin Shawn Rux, Ronchester Mananga Santiago, Timothy Lamont Saunders, Gary Graham Swenchonis, Jr., Andrew Triplett and Craig Bryan Wibberly,

         Plaintiffs - Appellants,

and

REED TRIPLETT,

Plaintiff,

and

OLLESHA SMITH JEAN; JACK EARL SWENSON,

Consolidated Plaintiffs,

v.

REPUBLIC OF SUDAN,

Defendant - Appellee.

------------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, Senior District Judge. (2:10-cv-00171-RGD-TEM)

Argued: October 24, 2017                    Decided: January 19, 2018

Before WILKINSON, DUNCAN, and AGEE, Circuit Judges.

Reversed in part, vacated in part, and remanded with instructions by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Duncan concurred.

**ARGUED:** Christopher M. Curran, WHITE & CASE, LLP, Washington, D.C., for Appellant/Cross-Appellee. Andrew C. Hall, HALL, LAMB, HALL & LETO, P.A., Miami, Florida, for Appellees/Cross-Appellants. Lewis Yelin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America. **ON BRIEF:** Nicole Erb, Claire A. DeLelle, WHITE & CASE LLP, Washington, D.C., for Appellant/Cross-Appellant. Nelson M. Jones III, Houston, Texas; Kevin E. Martingayle, STALLINGS & BISCHOFF, P.C., Virginia Beach, Virginia; Roarke Maxwell, HALL, LAMB, HALL & LETO, P.A., Miami, Florida, for Appellees/Cross-Appellants. Chad A. Readler, Acting Assistant Attorney General, Sharon Swingle, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C.; Richard C. Visek, Acting Legal Adviser, UNITED STATES DEPARTMENT OF STATE, Washington, D.C.; Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Amicus United States of America.

———————————

AGEE, Circuit Judge:

For over a decade, family members of United States sailors killed in the bombing of the *U.S.S. Cole* have pursued litigation in federal court against the Republic of Sudan for its alleged support of Al Qaeda, which was responsible for the bombing. This appeal arises from the latest suit wherein the district court denied Sudan's motion to vacate the default judgments entered against it. Because the Appellees' method of serving process did not comport with the statutory requirements of 28 U.S.C. § 1608(a)(3), we hold the district court lacked personal jurisdiction over Sudan. Accordingly, we reverse the district court's order denying Sudan's motion to vacate, vacate the judgments, and remand with instructions.

I.

On October 12, 2000, Al Qaeda bombed the *U.S.S. Cole*, a United States Navy guided-missile destroyer, as it was refueling in the Port of Aden in Yemen. Seventeen American sailors were killed and forty-two more were injured.

A.

In 2004, family members of the deceased sailors filed a complaint against Sudan in the United States District Court for the Eastern District of Virginia ("the *Rux* litigation").[1] Although foreign states generally enjoy immunity from suit in federal

---

[1] This summary of the *Rux* litigation is drawn from *Rux v. Republic of Sudan*, 410 F. App'x 581 (4th Cir. 2011); *Rux v. Republic of the Sudan*, 2009 WL 9057606 (4th Cir. July 4, 2009); and *Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006). The (Continued)

courts, 28 U.S.C. § 1604, the Foreign Sovereign Immunity Act ("FSIA") authorizes suits against a foreign state that has provided material support for certain acts of terrorism ("the terrorism exception"). Under the version of the FSIA in effect in 2004, the terrorism exception gave federal courts jurisdiction over the foreign state, but any claims had to be grounded in another substantive area of the law. *See* 28 U.S.C. § 1605(a)(7) (repealed 2008). Accordingly, the *Rux* plaintiffs' substantive claims rested on violations of the Death on the High Seas Act. With limited exceptions, Sudan did not enter appearances or otherwise defend the *Rux* suit. Following a series of rulings and appeals that are not relevant to this appeal, the district court held that Sudan was liable and awarded compensatory damages to the plaintiffs. The *Rux* plaintiffs appealed the district court's denial of their claim for additional damages. During the pendency of that appeal, Congress passed the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), Pub. L. No. 110–181, § 1083(b)(1)(A)(iii), 122 Stat. 341.

The NDAA, which became effective on January 28, 2008, repealed the prior FSIA terrorism exception to foreign state immunity, reenacted the exception's immunity-stripping language, and created a new substantive cause of action under the FSIA that authorizes recovery of noneconomic damages, including solatium and punitive damages. *See* NDAA, Pub. L. No. 110-181, § 1083 (codified at 28 U.S.C. § 1605A). The FSIA's new cause of action also specifically authorizes suit based on certain pre-enactment

judgments entered in the *Rux* litigation are final and unaffected by the appeal currently before the Court. We summarize what occurred to provide context for the current lawsuit.

15

events so long as delineated criteria are satisfied. § 1605A(b). We granted the *Rux* plaintiffs' motion to remand for further proceedings in the district court in light of the revised statutory framework. *Rux*, 2009 WL 9057606 at *1.

On remand, the *Rux* plaintiffs sought leave to supplement their complaint to include a claim for noneconomic damages under § 1605A(c). The district court denied the motion and the *Rux* plaintiffs again appealed. While that appeal was pending, the *Rux* plaintiffs and four new plaintiffs filed "a new, related action pursuant to 28 U.S.C. § 1605A in the [United States District Court for the] Eastern District of Virginia." *Rux*, 410 F. App'x at 582. In relevant part, we held that the filing of this new complaint rendered moot the *Rux* plaintiffs' arguments and we dismissed that appeal. *Rux*, 510 F. App'x at 586.

B.

The current appeal arises from the district court's adjudication of that "new, related action" brought under the amended FSIA.[2] Kumar filed the current complaint in April 2010, alleging that Sudan's conduct satisfied the immunity-stripping language of § 1605A(a)(1) and caused the death of the seventeen sailors killed on board the *U.S.S.*

---

[2] The plaintiffs in this case consist of both the original *Rux* plaintiffs and several new plaintiffs. For purposes of this appeal, this factual difference is of no consequence and they stand on the same legal footing. We refer to the plaintiffs collectively as "Kumar," one of the named plaintiffs.

After Kumar first filed the § 1605A-based complaint, the district court sua sponte concluded that res judicata barred the *Rux* plaintiffs' claims and denied Kumar's motion for entry of default. On appeal, we reversed and remanded the case for further proceedings, *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 212 (4th Cir. 2013), which have led to the appeal now before us.

16

*Cole*, in violation of the FSIA's new cause of action, § 1605A(c). He sought solatium and punitive damages.

In an effort to effectuate service of process pursuant to 28 U.S.C. § 1608(a)(3), the clerk of court sent the requisite documents "via certified mail, return receipt requested," in an enveloped addressed as follows:

> REPUBLIC OF SUDAN
> Serve: Deng Alor Koul,
> Minister of Foreign Affairs
> Embassy of the Republic of Sudan
> 2210 Massachusetts Avenue NW
> Washington, DC 20008

J.A. 158. Someone at the embassy accepted the envelope and signed the certified mail receipt.

Nevertheless, Sudan did not enter an appearance or file any responsive pleadings. Consequently, Kumar moved for entry of default and for the court to schedule proceedings allowing adjudication of a default judgment. Following a bench trial, the district court "found that Sudan's provision of material support and resources to al Qaeda led to the murders of the seventeen American servicemen and women serving on the *Cole*, and entered judgment against Sudan under the FSIA." J.A. 446. To more efficiently resolve the issue of damages, the court divided the suit into seventeen separate cases, each case involving all claims related to one of the seventeen deceased sailors.

In March 2015, after considering additional evidence on the alleged damages, the district court entered separate default judgment orders collectively awarding over $20

17

million in solatium and approximately $14 million in punitive damages to the Kumar plaintiffs.

In April 2015, just over thirty days after entry of those orders, Sudan entered an appearance and moved to vacate the default judgments under Federal Rules of Civil Procedure 55(c) and 60(b). In the alternative, Sudan requested the district court extend its time to appeal from the default judgments. In support of its motion, Sudan asserted numerous arguments challenging the district court's subject matter and personal jurisdiction, as well as the propriety of punitive damages.

The district court denied the motion to vacate, rejecting each of Sudan's contentions. It did, however, grant Sudan's motion for an extension of time to file a notice of appeal from the March 2015 default judgments. Sudan noted its appeal from both the default judgments and the denial of its post-judgment motions. In addition, Kumar noted a cross appeal challenging the district court's order extending Sudan's time to appeal. We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291.

II.

Sudan contends the district court lacked personal jurisdiction over it because Kumar did not properly effectuate service of process as required under the FSIA. Specifically, it contends that mailing service to the Sudanese embassy in Washington, D.C., does not satisfy 28 U.S.C. § 1608(a)(3) and contravenes the 1961 Vienna Convention on Diplomatic Relations and Optional Protocol on Disputes ("Vienna Convention"), Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95, which provides that a

18

foreign state's diplomatic mission is inviolable. If the district court lacked personal jurisdiction, then the judgment against Sudan is void. *Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir. 1998) ("[A]ny judgment entered against a defendant over whom the court does not have personal jurisdiction is void.").

Because the issue before us is one of statutory interpretation, we review de novo the district court's conclusion that Kumar's method of serving process satisfied § 1608(a)(3).[3] *Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010).

A.

The Federal Rule of Civil Procedure governing service of process provides that "[a] foreign state . . . must be served in accordance with 28 U.S.C. § 1608," *i.e.*, the FSIA. Fed. R. Civ. P. 4(j)(1). That statute, in turn, describes four methods of serving process on a foreign state, listed in hierarchical order. § 1608(a).

The first method is "in accordance with any special arrangement for service between the plaintiff and the foreign state." § 1608(a)(1). If no such arrangement exists, then service may be made "in accordance with an applicable international convention on

---

[3] Although Sudan appeals from both the March 2015 default judgments and the denial of its Rule 60(b) motion, our standard of review is the same in either posture given that the distilled issue before us is one of statutory interpretation: did Kumar's method of serving process comply with § 1608(a)(3)? Because Sudan prevails on this issue regardless of which decision is reviewed, we need not consider Kumar's argument on cross appeal that the district court erred in granting Sudan additional time to file its notice of appeal from the default judgments. *See United States v. Winestock*, 340 F.3d 200, 204 (4th Cir. 2003) ("District court decisions granting or denying Rule 60(b) relief are reviewed for abuse of discretion, although the exercise of discretion cannot be permitted to stand if we find it rests upon an error of law.").

service of judicial documents." § 1608(a)(2). And "if service cannot be made under [either of these provisions, the specified documents,] together with a translation of each into the official language of the foreign state, [can be sent] by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." § 1608(a)(3). Lastly,

> if service cannot be made within 30 days under [the third method described, then two copies of the documents, along with the requisite translation can be sent] by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

§ 1608(a)(4).

There is no dispute that the first two methods of service described in § 1608(a) were not available to Kumar.[4] Further, Kumar did not attempt to serve process by delivering the requisite documents through diplomatic channels as set out in subsection (a)(4), in part because failure of subsection (a)(3) service is a prerequisite to pursuing service under subsection (a)(4) and no question arose as to the validity of Kumar's method of serving process until after judgment.

The question before the Court, then, is limited to whether Kumar satisfied § 1608(a)(3), which allows service by mail "requiring a signed receipt[] to be addressed

---

[4] Sudan and the United States do not have any special arrangement for serving process, and Sudan is not a signatory to the Convention on Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, commonly known as the Hague Service Convention.

and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state." Specifically, we must decide whether Kumar satisfied the "addressed and dispatched to" requirement when he submitted the packet to be mailed by the clerk of court to the Sudanese embassy in Washington, D.C. Sudan does not contest compliance with the other components of service under subsection (a)(3) and the record shows Kumar instructed the clerk of court to send the requisite documents via the United States Postal Service's certified mail system, which is "a[] form of mail requiring a signed receipt." Consequently, our review is limited to whether delivering process to a foreign nation's embassy and identifying the head of that nation's ministry of foreign affairs as the recipient satisfies subsection (a)(3)'s requirement that the mailing is "addressed and dispatched to the head of the ministry of foreign affairs of the foreign state."

## B.

As always, our duty in a case involving statutory interpretation is "to ascertain and implement the intent of Congress." *Broughman*, 624 F.3d at 674.[5] We begin with the statute's text. *Ross v. R.A. North Dev., Inc.* (*In re Total Realty Mgmt., LLC*), 706 F.3d 245, 254 (4th Cir. 2013). In addition, "[t]he Supreme Court has often emphasized the crucial role of context as a tool of statutory construction. For example, the Court has stated that when construing a statute, courts must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and

---

[5] Here, and throughout, we have omitted internal quotation marks, citations, and alterations unless otherwise noted.

policy." *Brown & Williamson Tobacco Corp. v. FDA*, 153 F.3d 155, 162 (4th Cir. 1998). As a result, "the traditional rules of statutory construction to be used in ascertaining congressional intent include: the overall statutory scheme, legislative history, the history of evolving congressional regulation in the area, and a consideration of other relevant statutes." *Id.*

We begin with a general observation: based on § 1608(a)'s four precise methods for service of process and how that language contrasts with § 1608(b), subsection (a) requires strict compliance. Subsection (b), which applies in suits against "an agency or instrumentality of a foreign state," contains both specific methods of serving process, § 1608(b)(1)–(2), and a catchall provision expressly allowing service by any method "reasonably calculated to give actual notice," § 1608(b)(3). Although Congress authorized an array of specific and general service options under subsection (b), it did not include a similar catchall provision in subsection (a). This contrast between two subsections of the same statute suggests that Congress intended that the four methods authorized under subsection (a) be the exclusive and explicit means of effectuating service of process against foreign states. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). In other words, had Congress intended for a non-delineated method or actual notice to satisfy the requirements for serving process on a foreign state, it would have indicated as much by including a similar "reasonably calculated" provision in subsection (a). It did not do so.

22

Thus, a court cannot excuse noncompliance with the specific requirements of §

1608(a). *See Magness v. Russ. Federation*, 247 F.3d 609, 612–617 (5th Cir. 2001)

("Based on [other decisions], the express language of section 1608(a), and the United

States' interest in ensuring that the proper officials of a foreign state are notified when a

suit is instituted, we hold that plaintiffs must strictly comply with the statutory service of

process provisions when suing a foreign state . . . under section 1608(a)."); *Transaero,

Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153–54 (D.C. Cir. 1994) ("We hold that

strict adherence to the terms of 1608(a) is required.").[6] In short, "[l]eniency" when

applying § 1608(a) "would disorder the statutory scheme" Congress enacted. *Transaero*,

30 F.3d at 154.

We now turn to what, specifically, subsection (a)(3) requires of a plaintiff. First,

we note the text does not specify a geographic location for the service of process. Instead,

subsection (a)(3) requires that the mailing of process be "addressed and dispatched" to

the head of the ministry of foreign affairs. This phrase does not meaningfully limit the

geographic location where service is to be made, though it does reinforce that the location

must be related to the intended recipient. *See* address, *Oxford English Dictionary*

(defining the verb "address" as "[t]o send in a particular direction or towards a particular

---

[6] The Ninth Circuit has broadly stated that it has adopted "a substantial compliance test for the FSIA[]," but a review of its cases shows that it has only applied that test to a § 1608(a) service of process challenge where the plaintiff personally sent service of process rather than requesting the clerk of court to do so. *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129–30 (9th Cir. 2010); *Straub v. A P Green Inc.*, 38 F.3d 448, 453–54 (9th Cir. 1994).

location" or "[t]o direct (a written communication) to a specific person or destination," "[t]o direct to the attention of, communicate to"); dispatch, *Oxford English Dictionary* (defining the verb "dispatch" as "[t]o send off post-haste or with expedition or promptitude (a messenger, message, etc., having an express destination). The word regularly used for the sending of official messengers, and messages, of couriers, troops, mails, telegrams, parcels, express trains, packet-boats, etc."). As we discuss below, our sister circuits have held that subsection (a)(3) is satisfied where process is mailed to the head of the ministry of foreign affairs at the ministry of foreign affairs' address in the foreign state. *See, e.g.*, *Gates v. Syrian Arab Republic*, 646 F.3d 1, 4–5 (D.C. Cir. 2011); *Peterson*, 627 F.3d at 1129. But Kumar contends that subsection (a)(3)'s silence as to geographic location for the mailing means that the statute does not *require* service to be sent to the foreign state *and* that it allows service delivered to the foreign state's embassy in the United States.

Although Kumar does not advocate such an extreme position, the view that subsection (a)(3) only requires a particular recipient, and not a particular location, would allow the clerk of court to send service to *any* geographic location so long as the head of the ministry of foreign affairs of the defendant foreign state is identified as the intended recipient. That view cannot be consistent with Congress' intent: otherwise, service via General Delivery in Peoria, Illinois could be argued as sufficient.

While it is true that subsection (a)(3) does not specify delivery only at the foreign ministry in the foreign state's capital, Kumar's premise that subsection (a)(3) does not require service to be sent there does not lead to his conclusion that service at the embassy

24

satisfies the obligation under subsection (a)(3). The statute is simply ambiguous as to whether delivery at the foreign state's embassy meets subsection (a)(3) given that while the head of a ministry of foreign affairs generally oversees a foreign state's embassies, the foreign minister is rarely—if ever—present there. Serving the foreign minister at a location removed from where he or she actually works is at least in tension with Congress' objective, even if it is not strictly prohibited by the statutory language.

Because the plain language of subsection (a)(3) does not fully resolve the issue before us, we turn elsewhere for guidance as to Congress' intent. *See Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) ("[I]f the text of a statute is ambiguous, we look to other indicia of congressional intent such as the legislative history to interpret the statute."). Here, the FSIA's legislative history, coupled with the United States' obligations under the Vienna Convention, as well as the "great weight" accorded the State Department's interpretation of such foreign treaty matters, lead us to the conclusion that subsection (a)(3) is not satisfied by delivery of process to a foreign state's embassy.

To understand this interplay, we first observe the obligation under the Vienna Convention that "[t]he premises of the mission shall be inviolable. The agents of the receiving State may not enter them, except with the consent of the head of the mission."[7]

---

[7] The Vienna Convention sets out certain privileges and immunities governing diplomatic relations between States, including those governing permanent diplomatic missions. The "'premises of the mission' are the buildings or parts of buildings and the land ancillary thereto, irrespective of ownership, used for the purposes of the mission including the residence of the head of the mission." Vienna Convention, *supra* art. 1(i).

Vienna Convention, *supra* art. 22, ¶ 1. Elsewhere, the Vienna Convention protects the inviolability of diplomatic agents. *See id.* art. 29.[8]

The House Judiciary Committee Report regarding the enactment of § 1608(a) shows that the statute is meant to account for the United States' rights and obligations under the Vienna Convention. *See* H.R. Rep. No. 94–1487 (1977), *as reprinted in* 1976 U.S.C.C.A.N. 6604. The FSIA—including § 1608 in its present form—was first enacted in 1976, four years after the Vienna Convention entered into force for the United States. *See Tabion v. Mufti*, 73 F.3d 535, 538 n.5 (4th Cir. 1996). Congress knew and considered the Convention's obligations in drafting the FSIA. Specifically, the first draft of the bill allowed for service on a foreign state by "registered or certified mail . . . to the ambassador or chief of mission of the foreign state." S. 566, 93d Cong. § 1608 (2d Sess. 1973). The Department of State recommended removing that option based on its view that this method of service would violate Article 22 of the Vienna Convention. *See* H.R. Rep. No. 94–1487, at 26, *as reprinted in* 1976 U.S.C.C.A.N., at 6625; 71 Dep't of State Bull. 458, 458–59 (1974).

The House Report also took "[s]pecial note" of a "means . . . currently in use in attempting to commence litigation against a foreign state." H.R. Rep. No. 94–1487, at 26, *as reprinted in* 1976 U.S.C.C.A.N., at 6625. Describing "the mailing of a copy of the

---

[8] The United States is a signatory to the Vienna Convention and thus bound by its terms. *See* Vienna Convention, *supra* Presidential Proclamation ("I, Richard Nixon, President of the United States of America, proclaim and make public the Convention and the Optional Protocol to the end that they shall be observed and fulfilled with good faith on and after December 13, 1972 by the United States of America[.]").

summons and complaint *to* a diplomatic mission of the foreign state" as a means of serving process that was "*of questionable validity*," the House Report states that "[s]ection 1608 *precludes this method* [*of service*] so as to *avoid questions of inconsistency with section 1 of article 22 of the Vienna Convention on Diplomatic Relations*[.]" *Id.* (emphases added). The Report then reiterates "[s]ervice *on* an embassy by mail would be precluded under this bill." *Id.* (emphasis added). Thus, the House Report confirms that Congress did not intend § 1608 to allow for the mailing of service "to" or "on" a diplomatic mission as such a method would transgress the treaty obligations of the United States under the Vienna Convention.

In previously interpreting other provisions of the Vienna Convention, we have recognized that it "should be construed to give effect to the intent of the signatories," considering both its language and "the context in which the words were used." *Tabion*, 73 F.3d at 537. Moreover, "[t]reaties generally are liberally construed." *Id.* The question then becomes whether the Vienna Convention's inviolability provision prohibits the application of subsection (a)(3) in the manner that allows service of process as Kumar executed in this case: service delivered to the foreign nation's embassy in the United States. We conclude the Vienna Convention does exactly that.

Kumar contends there is a dispositive difference for purposes of subsection (a)(3) when an embassy itself is served at the embassy's address (which Kumar agrees would violate the Vienna Convention) and when the head of the ministry of foreign affairs is served at the embassy's address (which Kumar contends does not violate the Vienna Convention). We fail to discern any meaningful distinction here. In the first instance,

27

both the embassy and its address are used in an attempt to serve the foreign state; in the second, the embassy address is used as the head of the ministry of foreign affairs' address in an attempt to serve the foreign state. In both cases, a plaintiff has relied on the foreign states' embassy as the vehicle for effectuating service of process on the foreign state. Either action impinges upon the unique characteristics of a diplomatic mission recognized and protected by the Vienna Convention and casts the embassy in the role as agent for service of process. Any distinction between service "on" the embassy or "via" the embassy thus seems a meaningless semantic distinction.[9]

In foreign affairs matters such as we consider here, we afford the view of the Department of State "substantial deference." *See Abbott v. Abbott*, 560 U.S. 1, 130 S. Ct. 1983, 1993 (2010) ("It is well settled that the Executive Branch's interpretation of a treaty is entitled to great weight."); *Tabion*, 73 F.3d at 538 ("Substantial deference is due to the State Department's conclusion" about the meaning of a treaty's provisions). This judicial deference stems in part from the Constitution's grant to the Executive Branch— not the Judicial Branch—of broad oversight over foreign affairs. *Compare* U.S. Const. art. 2, § 2, cl. 2, *and* § 3 (reserving to the Executive Branch the ability to "make Treaties"

---

[9] The Vienna Convention allows "the head of the mission" to waive the inviolability of the premises. *See* Vienna Convention, *supra* art. 22, ¶ 1 ("The agents of the receiving State may not enter [the premises of the mission], except with the consent of the head of the mission."). Here, however, there is no evidence in the record to suggest that the Sudanese Ambassador did so. Simple acceptance of the certified mailing from the clerk of court does not demonstrate a waiver. That conclusion follows all the more strongly because the signature does not appear to be that of the Ambassador. Furthermore, no record document shows Sudan's Ambassador has authorized waiver as a general matter or for purposes of service in this case.

and "receive Ambassadors and other public Ministers"), *with* U.S. Const. art. 3 (containing no similar oversight of foreign affairs). In this case, the State Department contends that service at an embassy does not satisfy subsection (a)(3) and is inconsistent with the United States' obligations under the Vienna Convention. *See* Br. for the United States as Amicus Curiae in Supp. of Reversal 11 ("There is an international consensus that a litigant's service of process through mail or personal delivery to a foreign mission is inconsistent with the inviolability of the mission enshrined in" Article 22 of the Vienna Convention).

Relatedly, the Court properly considers the diplomatic interests of the United States when construing the Vienna Convention and the FSIA. *See Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984) (noting that, in construing the FSIA, courts should consider the United States' interest in reciprocal treatment abroad). The United States has represented that it routinely "refuses to recognize the propriety of a private party's service through mail or personal delivery to a United States embassy." Br. for the United States as Amicus Curiae in Supp. of Reversal 13. The following example illustrates the wisdom of deferring to the State Department's interpretation in this area: As noted, citing the Vienna Convention's provisions, the Secretary of State "routinely refuses to recognize" attempts to serve process on the United States by mail sent to U.S. embassies in foreign states. *See* Br. for the United States as Amicus Curiae in Supp. of Reversal 13–14. The legitimacy and sustainability of that position would be compromised were we to countenance Kumar's method of serving process to the Sudanese embassy. Why would a foreign judiciary recognize the United States' interpretation of the Vienna

29

Convention when it comes to rejecting service of process via its own embassies if that same method for purposes of serving process on foreign states were permitted in the United States? Clearly, the United States cannot expect to receive treatment under the Vienna Convention that its own courts do not recognize in similar circumstances involving foreign states. This dilemma is avoided by the construction of subsection (a)(3) urged by the State Department. We find its longstanding policy and interpretation of these provisions authoritative, reasoned, and entitled to great weight.

In view of the ambiguity in § 1608(a)(3) as to the place of service, we conclude the legislative history, the Vienna Convention, and the State Department's considered view to mean that the statute does not authorize delivery of service to a foreign state's embassy even if it correctly identifies the intended recipient as the head of the ministry of foreign affairs. Put another way, process is not properly "addressed and dispatched to" the head of the ministry of foreign affairs as required under § 1608(a)(3) when it is delivered to the foreign state's embassy in Washington, D.C.

We recognize that this holding adds to the existing tension between the courts of appeals' interpretations of § 1608(a)(3), but it aligns with the greater weight of those holdings. For instance, it is consistent with the approaches taken in the D.C. and Seventh Circuits. Although it has not been confronted with the precise issue raised in this case, the D.C. Circuit has suggested that § 1608(a)(3) requires service on the head of the ministry of foreign affairs in the foreign state. *See Barot v. Embassy of the Republic of Zam.*, 785 F.3d 26, 28, 30 (D.C. Cir. 2015) (noting that the district court rejected plaintiff's attempt to serve process at the Zambian Embassy "in Washington D.C., rather than at the

30

Ministry of Foreign Affairs in Lusaka, Zambia, *as the Act required*" and remanding to the district court so the plaintiff had the opportunity "to effect service pursuant to [28 U.S.C. §] 1608(a)(3)" by having the clerk of court send service "to the head of the ministry of foreign affairs in Lusaka, Zambia, whether identified by name or title, and not to any other official or agency"). Similarly, the Seventh Circuit observed that the Vienna Convention and § 1608 both prohibited a plaintiff from effectuating service under subsection (b)(3)'s catchall provision by serving process on a foreign company "wholly owned by the Belarusian government" by delivering it to the Belarusian ambassador at the embassy in Washington, D.C. *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 739, 749–50 (7th Cir. 2007) (holding "service *through* an embassy is expressly banned both by an international treaty to which the United States is a party and by U.S. statutory law" because the treaty prohibits service on a diplomatic officer and § 1608 does not authorize service of process on an ambassador (emphasis added)).[10]

Our holding conflicts with the view of the Second Circuit, which has held that serving Sudan's head of the ministry of foreign affairs in a package that was delivered by certified mail to the Sudanese embassy in Washington, D.C., satisfies § 1608(a)(3). *Harrison v. Republic of Sudan* (*Harrison I*), 802 F.3d 399, 402–06 (2d Cir. 2015), *reh'g*

---

[10] The United States contends the Fifth Circuit has also taken this view of § 1608(a)(3). But the facts of *Magness* bear little relation to what occurred here. There, the plaintiffs attempted to serve process by sending the "complaint to the Texas Secretary of State for forwarding to Boris Yeltsin" and "directly to the Russian Deputy Minister of Culture." *Magness*, 247 F.3d at 613. The plaintiffs in *Magness* never attempted to serve process "through the Ministry of Foreign Affairs," *id.*, but the Fifth Circuit did not address the physical location where such service could be sent.

*denied*, 838 F.3d 86 (*Harrison II*) (2d Cir. 2016) (denying petition for rehearing following further briefing and argument, and elaborating on the reasons for affirmance). The Second Circuit concluded "principles of mission inviolability and diplomatic immunity are [not] implicated" where service is made "*via* the embassy address." *Harrison I*, 802 F.3d at 405; *see also Harrison II*, 838 F.3d at 94 (distinguishing between service "on the Minister of Foreign Affairs at the foreign mission" and service "on the foreign mission itself or the ambassador"). For the reasons we've already explained, we find the Second Circuit's reasoning weak and unconvincing.[11] [12]

Several additional grounds the Second Circuit relied on merit brief discussion as well. First, after acknowledging § 1608(a)(3)'s silence as to geographic location, the court noted that "[i]f Congress had wanted to require that the mailing be sent to the head

---

[11] The distinction Kumar advances, and accepted by the Second Circuit in *Harrison*, rests on the artificial, non-textual distinction between service "on" the embassy and "via" the embassy. As noted earlier, we find no such distinction for purposes of subsection (a)(3). In both cases, the embassy is the de facto agent for service of process, something the Vienna Convention does not allow absent a waiver of mission inviolability. Further, although the Second Circuit acknowledged the State Department's view is to be afforded "great weight," *Harrison* II, 838 F.3d at 95, it summarily rejected that position, which seems to accord the State Department's view no weight at all. In contrast, the position we adopt in this case respects the "great weight" the State Department's view merits.

[12] A petition for certiorari in *Harrison* is currently pending before the Supreme Court, and the question presented squarely raises the issue of whether subsection (a)(3) and the Vienna Convention allow service of process "by mail addressed and dispatched to the head of the foreign state's ministry of foreign affairs 'via' or in 'care of' the foreign state's diplomatic mission in the United States." Pet. for a Writ of Cert. at i, *Republic of Sudan v. Harrison*, No. 16-1094 (U.S. Mar. 9, 2017). Shortly before we heard oral argument in this case, the Supreme Court invited the Solicitor General to file a brief expressing the views of the United States. *Republic of Sudan v. Harrison*, 138 S. Ct. 293 (2017) (mem.). At present, the Solicitor General has not filed its brief.

of the ministry of foreign affairs in the foreign country, it could have said so. In § 1608(a)(4), for example, Congress specified that the papers be mailed to the Secretary of State *in Washington, District of Columbia*[.]" *Harrison I*, 802 F.3d at 404; *accord Harrison II*, 838 F.3d at 91 ("If Congress had wanted to require that the mailing be sent to the minister of foreign affairs at the principal office of the ministry in the foreign country, it could have said so—but it did not."). We do not find this point to be persuasive given that subsection (a)(4) directs attention to one known location for one country—the United States—and so can be easily identified. *See* 28 U.S.C. § 1608(a)(4).

Second, the Second Circuit observed that requiring process "to a ministry of foreign affairs in the foreign country, makes little sense from a reliability perspective and as a matter of policy" given the reliability of a diplomatic pouch. *Harrison I*, 802 F.3d at 406; *accord Harrison II*, 838 F.3d at 90 & n.3 (approving of service on an embassy because such service "could reasonably be expected to result in delivery to the intended person," as the embassy "is the nerve center for a country's diplomatic affairs within the borders of another nation"). This misses the mark for multiple reasons. Reliability and policy concerns have no role when considering what the text of the statute—construed in light of the Vienna Convention—means. Subsection (a)(3) requires plaintiffs to attempt service by mail "requiring a signed receipt," but leaves the specific use of certified mail or other method open to take into account concerns about reliability of service on a particular foreign state. Moreover, § 1608(a) specifically contemplates that service via subsection (a)(3) may not be possible in every foreign state, as recognized by subsection (a)(4), which allows for service under the alternative of using diplomatic channels. If,

33

after thirty days, a plaintiff is unable to effectuate service pursuant to subsection (a)(3), he or she can turn to subsection (a)(4). *That* is the subsection that Congress intended plaintiffs to use to take advantage of the reliability and security of the diplomatic pouch.

Further, the method to effectuate service of process the United States undertakes does not violate the Vienna Convention because it respects international norms of communication via diplomatic channels. *See* Oct. 26, 2017, Letter from the United States as Amicus Curiae 1–2 ("When transmitting legal process through diplomatic channels, the State Department's typical practice is for the United States' embassy in the foreign state to deliver the papers to the state's foreign ministry. In some unusual circumstances, or if the foreign state so requests, the State Department will transmit process to a foreign state's embassy in the United States. In either case, the State Department transmits the papers under cover of a diplomatic note to the foreign state. . . . [T]his *transmission of legal papers from one executive to another* is considered to be communication through diplomatic channels." (emphasis added)). Certified mail sent from the clerk of court to the head of the ministry of foreign affairs at the foreign state's embassy is not of the same level and protocol and does not similarly respect the inviolability of the embassy for purposes of complying with the Vienna Convention.

## III.

Because the attempted service of process in this case did not comply with the FSIA's statutory requirements, the district court lacked personal jurisdiction over Sudan and could not enter judgment against it. *See* 28 U.S.C. § 1330(b) ("Personal jurisdiction

34

over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under [28 U.S.C. § 1608(a)]."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."). For that reason, the judgments entered against Sudan are void.

We therefore reverse the district court's denial of Sudan's motion to vacate the entry of judgment, vacate the judgments against it, and remand to the district court with instructions to allow Kumar the opportunity to perfect service of process in a manner consistent with this opinion.

*REVERSED IN PART,*
*VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*